B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| West Village Holdings, LLC | ONH Holdings, LLC |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>John Clark, Clark Law Group, 17 Executive Park Drive, Suite 480, Atlanta, Georgia 30329, (404) 760-0070<br>Will Geer, 50 Hurt Plaza, SE, Suite 1245, Atlanta, GA 30303; 404-233-9800 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Determine Extent and Priority of Lien; F.R.B.P. 7001(2); Pursuant to O.C.G.A. 44-14-80, the security deeds described in Plaintiff's Complaint have reverted to grantor and/or its assignees and successors in interest because more than seven years passed since maturity of the debts secured by the deeds and no power of sale had been fully exercised. As a result, Plaintiffs are entitled to avoid the liens held by Defendants in their entirety.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>West Village Holdings, LLC | BANKRUPTCY CASE NO.<br>19-50013-lrc | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Georgia | DIVISION OFFICE<br>Atlanta | NAME OF JUDGE<br>Judge Ritchey-Craig |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Will Geer | | |
| DATE<br><br>2/12/2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Will Geer | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WEST VILLAGE HOLDINGS, LLC, | ) | CASE NO. 19-50013-lrc |
| | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| WEST VILLAGE HOLDINGS, LLC, | ) | |
| | ) | Adversary Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ONH HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE VALIDITY AND EXTENT OF LIEN**

NOW COMES West Village Holdings, LLC (hereinafter "West Village") and files this adversary case and shows the Court as follows:

1.     Defendant ONH Holdings, LLC ("ONH") is a Delaware limited liability company and may be served via its registered agent, Gary R. Nelson, 10 Bay Circle, Dover, DE 19904.

2.     West Village is a Georgia limited liability company and Debtor in case no. 19-50013-lrc.

3.     This is an action to determine secured status and to determine the extent of the lien in property of the bankruptcy estate under F.R.B.P. 7001. This is a core proceeding under 28 U.S.C. § 157. Jurisdiction and venue are proper in this Court under 28 U.S.C. §§ 1334, 1408 and 1409.

4.     West Village is the owner of real property which is involved in this proceeding located in Fulton County, Georgia, known as 7335 Old National Highway, Riverdale, Georgia, and is more particularly described at Exhibit "A" attached hereto and by this reference made a part hereof.

5West Village is also the owner of property located in Fulton County, Georgia  known as 0 Jonesboro Road, Riverdale, Georgia, more particularly described in Exhibit "B" attached hereto and by this reference made a part hereof.  The real properties identified in Exhibits A and B are collectively referred to as the "Land."

6.     West Village obtained its interest in the Land from that certain quitclaim deed made by Sons Investment Group LTD ("Sons"), dated October 24, 2018, recorded in Deed Book 59426, Page 178, Fulton County Records (the "Deed").  A true and correct copy of the Deed is attached hereto as Exhibit "C".

7.     Sons previously executed a security deed (the "First Security Deed") conveying the Land to Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower") on April 21, 2008, recorded in Deed Book 46639, Page 543, Fulton County, Georgia Records, as security for a Note in the original principal amount of $3,290,000, with a maturity date of April 21, 2009 as stated in the First Security Deed.  A true and correct copy of the First Security Deed is attached hereto as Exhibit "D".

8.     No intangible tax was paid on the First Security Deed, because the debt secured by the Note is a "short-term" note as defined by O.C.G.A. § 48-6-60(4), which is a note that matures in less than three years from execution, and is therefore exempt from paying intangible taxes.

9.      On March 29, 2011, almost two years after signing the First Security Deed, Sons executed a second security deed conveying the Land to Watch Tower as further security for another note in the amount of $228,500.00, which matured on December 29, 2011 (the "Second Security Deed").   The Second Security Deed is recorded in Deed Book 50000, Page 352, Fulton County, Georgia Records.  A true and correct copy of the Second Security Deed is attached hereto as Exhibit "E".

10.   No intangible tax was paid on the Second Security Deed, in evidence that the debt secured by the Note is a "short-term" note as defined by O.C.G.A. § 48-6-60(4) as being a note that matures in less than three years from execution.   This also illustrates that the Second Security Deed was not a modification of the First Security Deed, as such would have operated to extend the maturity date of the debt secured by the First Security Deed beyond three years, and therefore the intangible tax would be required to be paid under O.C.G.A. § 48-6-61.

11.   Under O.C.G.A. § 44-14-80, title conveyed under security deeds revert to the grantor seven years after the maturity of the debts secured by the deed unless the power of sale has been exercised prior to reversion.  Under O.C.G.A. § 48-6-66, all security deeds are required to state the date of maturity of the debts they secure.

12.   The First Security Deed contained a maturity date of April 21, 2009, which means that the title conveyed by the First Security Deed reverted from Watch Tower to Sons on April 21, 2016.

13.   Under O.C.G.A. § 44-14-83, once the title to a security deed has reverted, it cannot be foreclosed and all actions to recover the title to such property are barred.

14. On June 7, 2017, over a year after title to the First Security Deed reverted to Sons, Watch Tower purported to assign the First Security Deed to Respondent ONH. A true and correct copy of the Assignment of the First Security Deed is attached hereto as Exhibit "F".

15. On June 7, 2017, Watch Tower assigned the Second Security Deed to Sons. The title conveyed by the Second Security Deed reverted on December 29, 2018. A true and correct copy of the Assignment of the Second Security Deed is attached hereto as Exhibit "G".

16. The Power of Sale contained in both the First and Second Security Deeds was advertised for a sale date of January 3, 2018. But by this date the title to both security deeds had reverted, and under O.C.G.A. § 44-14-83, ONH was therefore barred and prohibited from exercising any power of sale. The foreclosure advertisement states that the First Security Deed also secured an "Amendment to Promissory Note, dated March 29, 2011," but the First Security Deed was not amended to reflect any change in its maturity date as required by O.C.G.A. § 44-14-80(b).  A true and correct copy of the foreclosure advertisement is attached hereto as Exhibit "H".

17. In an apparent attempt to side-step the reversion, ONH caused an affidavit (the "Affidavit") to be filed on December 4, 2018 relative to the First Security Deed that reverted in 2016. The affidavit purports to set out a modification of the debt secured by the First Security Deed that allegedly extended the debt maturity date to December 29, 2011. The Affidavit is attached hereto as Exhibit "I".

18. Even if the Affidavit accurately states the terms of a modification of the maturity date of the debt referenced in the First Security Deed to December 29, 2011, such has no effect on the reversion because such affidavits must be filed prior to reversion, as provided by O.C.G.A. § 44-14-81(c). This protects bona fide purchasers like West Village from untimely

affidavits being filed after having purchased the property with no indication that the reverted debt had been extended.

19.   If the Affidavit accurately states the terms of a modification of the maturity date of the debt referenced in the First Security Deed to December 29, 2011, such would amount to a maturity of the debt beyond three years from origination, therefore triggering the intangible tax imposed by O.C.G.A. 48-6-61.  The procedure for paying intangible tax when the modification makes a short-term note a long-term note is set out in O.C.G.A. § 48-6-62.  ONH did not pay the tax because the affidavit does not contain a certification from the clerk of court stating that the intangible tax had been paid, as required by O.C.G.A. § 48-6-62(b).

20.   ONH was barred from exercising the power of sale in the Security Deed from the date of modification until the intangible tax was paid as mandated by O.C.G.A. § 48-6-67. Therefore, even if the maturity date had been extended and properly identified in the real estate records, ONH was (and is) barred from exercising the power of sale until the tax is paid.  But now the Security Deeds have reverted even by measuring the reversion period from December 29, 2011.

21.   The Affidavit also fails for a variety of other reasons, such as failure to state the name and address of the owner and holder of the debt and the deed securing the debt, the nature of the claim, the amount due thereon, and the date of the last payment thereon. The Affidavit is also misleading because it misstates the terms of the First Security Deed as extending to "any and all other indebtedness contained in any other instrument, document, agreement, or writing executed prior to, concurrently therewith, or in the future by Grantor."  The First Security Deed does not contain any such term.

22.   ONH's election to advertise the property for sale under the powers of sale of both the First and the Second Security Deed was designed to chill the bid by unlawfully claiming that the property was subject to a First Security Deed in excess of $3 million when it plainly knew this Security Deed had reverted two years prior.  The advertisement incorrectly states that the Second Security Deed secures "any and all other indebtedness contained in any other instrument, document, agreement, or writing executed in connection with the transactions that resulted in the obligations secured under said security deed, including Amendment to Promissory Note of same date in the original principal amount of $3,290,000.00."  This is patently false.  The Second Security Deed does not contain any sort of "dragnet clause" and specifically limits itself to the $228,500 note and any modifications thereof.  ONH was advertising the Land in a manner that made it seem as if the Land was subject to a $3million loan when it was not in order to keep competitive bidders away from the sale.  Therefore, the January 3, 2019 sale could not have been proper even if one or both of the Security Deeds had not previously reverted because the advertisement was designed to chill any competitive bidding.

23.   West Village is entitled to an Order from this Court cancelling the First Security Deed and Second Security Deed for the reasons stated above.

WHEREFORE, West Village respectfully requests the following relief:

a)   That the Court enter an Order cancelling the First Security Deed and Second Security Deed and;

b)   That West Village have such other and further relief as is just and equitable.


This 12th day of February, 2019.

*/s/ John C. Clark*
John C. Clark

Georgia Bar No. 127347
Tahra T. Porterfield
Georgia Bar No. 721162
Special Counsel for West Village Holdings, LLC
Clark Law Group, LLC
17 Executive Park Drive, Suite 480
Atlanta, Georgia 30329
(404) 760-0070
(404) 920-8126 (fax)
jclark@jclarklawgroup.com

/s/ Will B. Geer
Will B. Geer
Georgia Bar No. 940493
Wiggam & Geer, LLC
50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303
(404) 233-9800
(404) 287-2767 (fax)
Lead Bankruptcy Counsel for West Village Holdings, LLC
wgeer@wiggamgeer.com

# EXHIBITS

EXHIBIT A.  Legal Description 7335  Old National Hwy

EXHIBIT B.  Legal Description Jonesboro Road

EXHIBIT C.  Quitclaim Deed

EXHIBIT D.  First Security Deed

EXHIBIT E.  Second Security Deed

EXHIBIT F.  Assignment of First Security Deed

EXHIBIT G.  Assignment of Second Security Deed

EXHIBIT H.  Foreclosure Advertisement

EXHIBIT I.  Affidavit

**EXHIBIT A.  Legal Description 7335  Old National Hwy**

**EXHIBIT "A"**

7335  Old National Hwy, Riverdale, GA 30296

Parcel ID: 13 -0188-  LL-046-1

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 13TH DISTRICT OF FORMERLY CAMPBELL, NOW FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:**

**BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY (50 FOOT RIGHT OF WAY) 650.0 FEET SOUTHEASTERLY, AS MEASURED ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY FROM THE INTERSECTION FORMED BY THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY WITH THE WEST LINE OF LAND LOT 188; THENCE CONTINUING IN A SOUTHEASTERLY DIRECTION, ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY, 400.00 FEET TO AN IRON PIN; RUNNING THENCE SOUTH 88 DEGREES 24 MINUTES WEST 518.2 FEET TO THE WEST LINE OF LAND LOT 188 AS MARKED BY AN IRON PIN; RUNNING THENCE NORTH 01 DEGREE 00 MINUTES EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 00 MINUTES EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 181.1 FEET TO AN IRON PIN; RUNNING THENCE NORTH 60 DEGREES 30 MINUTES EAST 382.9 FEET TO THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY AT THE POINT OF BEGINNING, BEING IMPROVED PROPERTY COMPRISING 2.885 ACRES ALL AS SHOWN ON THE HEREINAFTER DESCRIBED PLAT OF SURVEY.**

**MORE PARTICULARLY SHOWN AND DELINEATED ON A PLAT OF SURVEY DATED December 19, 1977, AS PREPARED BY ESTON PENDLEY & ASSOCIATES, INC., REGISTERED LAND SURVEYORS.  REFERENCE IS MADE TO SAID PLAT OF SURVEY FOR A MORE PARTICULAR DESCRIPTION.**

**LESS AND EXCEPT:**
**ALL THAT TRACT OR PARCEL OF LAND CONDEMNED BY FULTON COUNTY, PURSUANT TO ORDER DATED MARCH 11, 1981, CONDEMNATION ACTION C-71399, FULTON SUPERIOR COURT, RECORDED IN BOOK 1078, PAGE 233.**

**EXHIBIT B.  Legal Description Jonesboro Road**

## EXHIBIT "B"

Known as: 0 Jonesboro Rd, Riverdale, GA 30296

Parcel ID:  13 0196 LL0156
. TRACT 1:

All that tract or parcel of land lying and being in Land Lot 189 of the 13th District, Fulton
County, Georgia, being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the
intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning
point also being at the northwest corner of property now or formerly owned by the Estate
of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along
said Godby property 871.01 feet to a CP; running thence north 86 degrees 14 minutes 55
seconds west 399.89 feet to a right of way monument; running thence south 03 degrees
05 minutes 46 seconds west 14.87 feet to a right of way monument; running thence north
86 degrees 28 minutes 01 second west 38.88 feet to a right of way monument; running
thence north 03 degrees 07 minutes 55 seconds east 15.21 feet to a right of way
monument; running thence north 88 degrees 45 minutes 54 seconds west 432.67 feet to a
right of way monument located on the line dividing Land Lots 189 and 189, said District
and County; running thence south 00 degrees 58 minutes 42 seconds west along said
Land Lot line a distance of 36.79 feet to the right of way monument located at the
common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said
District and County and the point of beginning; being a tract of land containing 0.450
acre, according to Boundary Survey prepared by Grant Shepherd & Associates,
Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

TRACT 2:

All that tract or parcel of land lying and being in Land Lot 196 of the 13th District, Fulton
County, Georgia, and being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the
intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning
point also being at the southwest corner of property now or formerly owned by the Estate
of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along
said Godby property 871.01 feet to a CP; running thence south 86 degrees 14 minutes 55
seconds east 262.64 feet to a ½" rebar found; running thence south 00 degrees 19 minutes
36 seconds west 261.02 feet to a 1" open top pipe found at the northeast corner of
property now or formerly owned by Mary Lankford (DB 16002, page 195), Fulton
County records); running thence north 89 degrees 20 minutes 30 seconds west along the
northerly lines of properties now or formerly owned by Mary Lankford, Ernest Page (DB
22074, page 287), Elica Morris, Willie Howell (DB 40570, page 562), Alvin Morris (DB
32450, page 486), Rodney Vance (DB 32650, page 65), Gerald Vowell (DB 11620, page
97), and Monthesinos Family a total distance of 1,139.73 feet to the line dividing Land
Lots 195 and 196, said District and County; running thence north 01 degree 43 minutes
56 seconds east along said Land Lot line a distance of 266.67 feet to the right of way
monument located at the common corner formed by the intersection of Land Lots 189,
190, 195 and 196 said District and County and the point of beginning; being a tract of
land containing 7.019 acres, according to Boundary Survey prepared by Grant Shepherd
& Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

**EXHIBIT C.  Quitclaim Deed**

Deed Book 59426 Page 178
Filed and Recorded 11/16/2018 1:46:00 PM
2018-0296531
Real Estate Transfer Tax $15.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9303363123
7067927936

When recorded, please return to:                    Cross Ref: Book 40299  Page 49

TPID:  13–0188–LL–046–1

**QUITCLAIM DEED**    TPID: 13–0196–LL–015–6

    This Deed is made and entered into as of this __24th__ day of October 2018, between __Sons Investment Group LTD__ (hereinafter "Grantor") and __West Village Holdings LLC__ , (hereinafter "Grantee").

    FOR and in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, Grantor has released, remised, and forever quitclaimed and by these presents does release, remise and forever quitclaim unto Grantee, its successors and assigns, all of Grantor's right, title and interest in and to the property more particularly described on Exhibit "A" and Exhibit "B" attached hereto and by this reference made a part hereof.

    TO HAVE AND HOLD the foregoing unto Grantee, its successors and assigns, in as full and ample a manner as held by Grantor, so that neither Grantor, nor any persons claiming by, through or under Grantor, shall, at any time or by any ways or means, have claim or demand any right or title to said property or property rights.

    IN WITNESS WHEREOF, Grantor has caused these presents to be executed under seal as of the date and year first above written.

    THIS DEED is given in furtherance of the winding up of the affairs of Sons Investment Group LTD., now dissolved.

As to Grantor, signed,
sealed and delivered
in the presence of:

                        Alwin K. Peterson, CEO
                        Sons Investment Group LTD

Unofficial Witness                    [SEAL]  Notary Public

Deed Book 59426 Page 179

EXHIBIT "A"

Known as: 7335  Old National Hwy, Riverdale, GA 30296

Parcel ID: 13 -0188-  LL-046-1

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 13TH DISTRICT OF FORMERLY CAMPBELL, NOW FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY (50 FOOT RIGHT OF WAY) 650.0 FEET SOUTHEASTERLY, AS MEASURED ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY FROM THE INTERSECTION FORMED BY THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY WITH THE WEST LINE OF LAND LOT 188; THENCE CONTINUING IN A SOUTHEASTERLY DIRECTION, ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY, 400.00 FEET TO AN IRON PIN; RUNNING THENCE SOUTH 88 DEGREES 24 MINUTES WEST 518.2 FEET TO THE WEST LINE OF LAND LOT 188 AS MARKED BY AN IRON PIN; RUNNING THENCE NORTH 01 DEGREE 00 MINUTES EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 00 MINUTES EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 181.1 FEET TO AN IRON PIN; RUNNING THENCE NORTH 60 DEGREES 30 MINUTES EAST 382.9 FEET TO THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY AT THE POINT OF BEGINNING, BEING IMPROVED PROPERTY COMPRISING 2.885 ACRES ALL AS SHOWN ON THE HEREINAFTER DESCRIBED PLAT OF SURVEY.

MORE PARTICULARLY SHOWN AND DELINEATED ON A PLAT OF SURVEY DATED December 19, 1977, AS PREPARED BY ESTON PENDLEY & ASSOCIATES, INC., REGISTERED LAND SURVEYORS. REFERENCE IS MADE TO SAID PLAT OF SURVEY FOR A MORE PARTICULAR DESCRIPTION.

LESS AND EXCEPT:
ALL THAT TRACT OR PARCEL OF LAND CONDEMNED BY FULTON COUNTY, PURSUANT TO ORDER DATED MARCH 11, 1981, CONDEMNATION ACTION C-71399, FULTON SUPERIOR COURT, RECORDED IN BOOK 1078, PAGE 233.

Deed Book 59426 Page 180
Cathelene Robinson
Clerk of Superior Court

# Exhibit "B"

Known as: 0 Jonesboro Rd, Riverdale, GA 30296     Parcel ID:  13 0196 LL0156

**TRACT 1:**

All that tract or parcel of land lying and being in Land Lot 189 of the 13th District, Fulton County, Georgia, being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the northwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence north 86 degrees 14 minutes 55 seconds west 399.89 feet to a right of way monument; running thence south 03 degrees 05 minutes 46 seconds west 14.87 feet to a right of way monument; running thence north 86 degrees 28 minutes 01 second west 38.88 feet to a right of way monument; running thence north 03 degrees 07 minutes 55 seconds east 15.21 feet to a right of way monument; running thence north 88 degrees 45 minutes 54 seconds west 432.67 feet to a right of way monument located on the line dividing Land Lots 188 and 189, said District and County; running thence south 00 degrees 58 minutes 42 seconds west along said Land Lot line a distance of 36.79 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 0.450 acre, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

**TRACT 2:**

All that tract or parcel of land lying and being in Land Lot 196 of the 13th District, Fulton County, Georgia, and being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the southwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence south 86 degrees 14 minutes 55 seconds east 262.64 feet to a ½" rebar found; running thence south 00 degrees 19 minutes 36 seconds west 261.02 feet to a 1" open top pipe found at the northeast corner of property now or formerly owned by Mary Lankford (DB 16002, page 195), Fulton County records); running thence north 89 degrees 20 minutes 30 seconds west along the northerly lines of properties now or formerly owned by Mary Lankford, Ernest Page (DB 22074, page 287), Elica Morris, Willie Howell (DB 40570, page 562), Alvin Morris (DB 32450, page 486), Rodney Vance (DB 32650, page 65), Gerald Vowell (DB 11620, page 97), and Monthesinos Family a total distance of 1,139.73 feet to the line dividing Land Lots 195 and 196, said District and County; running thence north 01 degree 43 minutes 56 seconds east along said Land Lot line a distance of 266.67 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 7.019 acres, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

**EXHIBIT D.  First Security Deed**

Deed Book 46639 Pg  543
Filed and Recorded Apr-22-2008 03:43pm
2008-0093724
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

08-57215

RETURN TO:
SHUPING, MORSE & ROSS
6259 Riverdale Road,
Riverdale, GA 30274-1698

Sons Investment Group Limited,
Grantor
Grantor's Address
130 Walden Way
Fayetteville, GA 30214

Watch Tower Bible and Tract
Society of Pennsylvania, Beneficiary
Beneficiary's Address
c/o Fairfield Financial Services, Inc.
2727 NE Hoyt St.
Portland, OR 97232

After recording return to:
Fairfield Financial Services, Inc.
2727 NE Hoyt St.
Portland, OR 97232

**STATE OF GEORGIA**
**COUNTY OF FULTON**

### SECURITY DEED AND AGREEMENT

THIS INDENTURE  is made this 21st day of April, 2008, by and between

Sons Investment Group Limited

party of the first part, hereinafter referred to as "Grantor"; and

Watch Tower Bible and Tract Society of Pennsylvania

party of the second part, hereinafter referred to as "Grantee", whose address is

c/o Fairfield Financial Services, Inc., 2727 NE Hoyt St., Portland, OR 97232

### WITNESSETH

FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Grantee resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells unto Grantee the following described land:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 13TH DISTRICT OF FORMERLY CAMPBELL, NOW FULTON COUNTY, GEORGIA, AND BEING KNOWN AS 7335 OLD NATIONAL HIGHWAY RIVERDALE, GA 30296 AND MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

ADDITIONAL COLLATERAL  - JONESBORO ROAD PROPERTY

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 189 AND 196 OF THE 13TH DISTRICT, FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH ANY AND ALL of the following:

(i)   all buildings, structures and other improvements now or hereafter located thereon or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto;

(ii)   all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof;

(iii) all rents, issues, income, revenues and profits accruing therefrom whether now or hereafter due;

(iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon;

(v)   all minerals, flowers, crops, trees, timber, shrubbery and other embluments now or hereafter located thereon or thereunder or on or under any part or parcel thereof;

(vi) all estates, rights, title and interest therein, or in any part or parcel thereof;

Deed Book 46639 Pg 544

(vii) all equipment, machinery, apparatus, fittings, fixtures whether actually or constructively attached thereto and including all trade, domestic and ornamental fixtures, furniture, furnishings and all personal property of every kind or description whatsoever nor or hereafter located thereon, or in or on the buildings, structures and other improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and

(viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof. All of the foregoing are hereinafter sometimes referred to collectively as the "Premises."

TO HAVE AND HOLD the Premises to the only proper use, benefit and behoof of Grantee, forever, in fee simple.

GRANTOR WARRANTS that Grantor has good title to the Premises, that Grantor is lawfully seized and possessed of the Premises, that Grantor has the right to convey the Premises, that the Premises are unencumbered except as may be herein expressly provided and that Grantor shall forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

THIS INSTRUMENT IS A DEED passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and a security agreement granting a security interest pursuant to the Uniform Commercial Code of the State of Georgia, and it is not a mortgage. This deed and security agreement is made and intended to secure:

(i)   an obligation of Grantor to Grantee evidenced as follows:
One Promissory Note in the original principal amount of $3,290,000, which Promissory Note is due and payable in full no later than April 21, 2009.

(ii)  any and all renewal or renewals, extension or extensions, modification or modifications thereof, and substitution or substitutions therefor, either in whole or in part; and

The obligations which this deed and security agreement is given to secure are hereinafter sometimes referred to collectively as the "Indebtedness." This deed and security agreement is hereinafter sometimes referred to as this "Security Deed."

## GRANTOR COVENANTS AND AGREES:

(1) *Junior Encumbrances*: Grantor shall not create or permit to exist any liens or encumbrances on the Premises which are junior and inferior in terms of priority to this Security Deed.

(2) *Payments by Grantor*: Grantor shall pay, when due and payable:
   (i)   the Indebtedness in accordance with the terms and conditions of the instruments evidencing the same;
   (ii)  all taxes, all assessments, general or special, and all other charges levied on or assessed or placed or made against the Premises, this Security Deed, the Indebtedness or any interest of Grantee in the Premises, this Security Deed or the Indebtedness;
   (iii) premiums on policies of fire and casualty insurance covering the Premises, as required by this Security Deed;
   (iv)  premiums on all life insurance policies now or hereafter pledged as collateral for the Indebtedness or any part thereof;
   (v)   premiums for all liability, rental, mortgage and flood insurance policies required by this Security Deed or now or hereafter required by Grantee in connection with the Premises or the Indebtedness or any part of either; and
   (vi)  all ground rents, lease rentals and other payments respecting the Premises payable by Grantor. Grantor shall promptly deliver to Grantee, upon request by Grantee, receipts showing payment in full of all the foregoing items; provided, however, that Grantee shall not require a receipt showing payment in full of the Indebtedness. In the event any state, federal, municipal or other governmental law, order, rule or regulation becomes effective subsequent to the date hereof and in any manner changes or modifies the laws in force on the date hereof governing the taxation of the Indebtedness or the manner of collecting the taxes thereon so as to adversely affect Grantee by requiring that a payment or payments be made or other action be taken to protect Grantee's interest under this Security Deed or the Indebtedness, Grantor shall promptly pay any amounts required on or before the date the same are due or take any other action required on or before the date any such action must be taken.

(3) *Grantee's Acts on Behalf of Grantor*: In the event Grantor shall either fail or refuse to pay or cause to be paid, as the same shall become due and payable, any item (including all items specified in Paragraph (2) immediately above) which Grantor is required to pay hereunder or which Grantor may pay to cure an event of default hereunder, or in the event Grantor shall either fail or refuse to do or perform any act which Grantor is obligated to do or perform hereunder or which Grantor may do or perform to cure an event of default hereunder, then Grantee, at Grantee's option, may make such payment or do or perform such act on behalf of Grantor. All such payments made by Grantee and all costs and expenses incurred by Grantee in doing or performing all such acts shall be and shall become part of the Indebtedness secured hereby and shall bear interest at the highest rate per annum then being charged with respect to any part of the indebtedness secured hereby from the date paid or incurred by Grantee, and such interest thereon shall also be part of the Indebtedness secured hereby.

(4) *Further Assurances*: Grantor shall, at any time and from time to time upon request by Grantee, make, execute and deliver, or cause to be made, executed and delivered, any and all other and further instruments, documents, certificates, agreements, letters, representations and other writings which may be necessary or desirable, in the opinion of Grantee, in order to effectuate, complete, correct, perfect or continue and preserve the obligations of Grantor under the Indebtedness and the lien and security interest of Grantee hereunder. Grantor shall upon request by Grantee certify in writing to Grantee, or to any proposed assignee

Deed Book 46639 Pg 545

of this Security Deed, the amount of principal and interest then owing on the Indebtedness and whether or not any set-offs or defenses exist against all or any part of the Indebtedness.

(5) *Rents and Leases*: Grantor hereby transfers, assigns and conveys unto Grantee all of Grantor's right, title and interest in and to all leases or undertakings to lease now or hereafter existing or made, and all other agreements for use or occupancy, with respect to the Premises or any part thereof, and grants to Grantee a security interest in all rents, issues, income, revenues, profits, accounts and contract rights due or to become due thereunder or otherwise deriving from the use and occupancy of the Premises. Grantor shall faithfully perform the covenants of Grantor as lessor under all present and future leases of all or any portion of the Premises and shall not do, neglect to do, or permit to be done, anything which may cause the termination of such leases, or any of them, or which may diminish or impair their value or the rents provided for therein or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee, shall not further assign the rents, issues, income, revenues, profits, accounts or contract rights from the Premises or any part thereof, shall not consent to the cancellation or surrender of any lease of the Premises or any part thereof now existing or hereafter to be made, shall not modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rent payable thereunder and shall not collect rents from the Premises or any part thereof for more than one month in advance. Grantor shall procure and deliver to Grantee upon request estoppel letters or certificates from each lessee, tenant, occupant in possession and other user of the Premises or any part thereof, as required by and in form and substance satisfactory to Grantee, and shall deliver to Grantee a recordable assignment of all of Grantor's interest in all leases now or hereafter existing or made with respect to the Premises or any part thereof, as required by and in form and substance satisfactory to Grantee, together with proof of due service of a copy of each assignment on each lessee, tenant, occupant in possession or other user of the Premises or any part thereof.

(6) *Maintenance and Repair*: Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances, rule, regulations and directives of any governmental authority relating to the Premises or any part thereof or the use or occupancy of the Premises or any part thereof. No part of the Premises, including but not limited to any buildings, structures, parking lots, driveways or other improvements now or hereafter constructed on the land which is part of the Premises, shall be removed, demolished or materially altered without the prior written consent of Grantee. If at any time during the continuance of the Indebtedness any addition, alteration, change, repair, reconstruction or other work on the Premises of any nature, structural or otherwise, becomes necessary or desirable because of damage to or destruction of the Premises or any part thereof, the entire expense thereof, regardless of when the same shall be incurred or become due, shall be the sole obligation and responsibility of Grantor, and Grantor shall pay the entire expense thereof promptly when due.

(7) *Hazard and Liability Insurance*: Grantor shall keep the Premises insured against loss or damage by fire and such other casualties and risks as the Grantee may require from time to time, with such companies, in such amounts and under such forms of policies as Grantee may approve. Such policies shall insure Grantee's interest in the Premises, name Grantee as an insured party thereunder, provide that losses thereunder shall be payable to Grantee pursuant to such forms of loss payable clauses as Grantee may approve and provide that no cancellation or reduction in coverage shall be effective unless the insurer first gives Grantee thirty (30) days prior written notice. Irrespective of the insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as additional collateral for the payment of the Indebtedness, all policies of insurance which insure against loss or damage to the Premises, and Grantor hereby grants to Grantee a security interest in the proceeds from any and all such policies. Grantor shall also procure and maintain public liability insurance coverage with such companies, in such amounts and under such forms of policies as Grantee may approve, naming Grantee as an additional insured thereunder and providing that no cancellation or reduction in coverage thereunder shall be effective unless the insurer first gives Grantee thirty (30) days prior written notice. Forthwith upon the issuance of all such policies, Grantor shall deliver the same to Grantee together with evidence satisfactory to Grantee that the premiums therefor have been paid. Within fifteen (15) days prior to the expiration date of each such policy, Grantor shall deliver to Grantee a renewal policy together with evidence satisfactory to Grantee that the premium therefor has been paid. In the event of a foreclosure and sale by Grantee of the Premises, the purchaser of the Premises shall succeed to all rights of Grantor in and to such policies, including the right to the refund of unearned premiums and to dividends thereunder, and Grantee may, at Grantee's election, assign and deliver the policies to such purchaser without any warranty or representation, express or implied, and without recourse. In the event of damage to or destruction of the Premises or any part thereof, Grantee may adjust, settle or compromise claims under such policies, and the proceeds therefrom shall be paid to Grantee. Grantee, at Grantee's option and in Grantee's sole discretion, may either

(i) apply the proceeds on any part thereof to the Indebtedness or

(ii) require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse the proceeds to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor.

(8) *Flood Insurance*: Grantor represents and has certified to Grantee that no part of the Premises lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973. In the event Grantee determines that the rules or regulations of the Federal Reserve Board, the Comptroller of the Currency or any other governing agency licensing or regulating the operations of Grantee require that flood insurance coverage be obtained for the Premises or any part thereof in order for Grantee to comply with such rules or regulations or with the Flood Disaster Protection Act of 1973 as then in effect, then Grantor, upon receiving written notice from Grantee of such determination:

(i) shall promptly purchase and pay the premiums for such flood insurance policies as Grantee deems required by such agency or agencies so that Grantee shall be deemed in compliance with the rules and

Deed Book 46639 Pg 546

          regulations of such agency or agencies and with the Flood Disaster Protection Act of 1973 as then in
          effect; and

     (ii)  shall deliver such policies to Grantee together with evidence satisfactory to Grantee that the premiums
          therefor have been paid.

Such policies of flood insurance shall be in a form satisfactory to Grantee, shall name Grantee as an insured thereunder, shall provide that losses thereunder be payable to Grantee pursuant to such forms of loss payable clause as Grantee may approve, shall be for an amount at least equal to the Indebtedness or the maximum limit of coverage made available with respect to the Premises under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancellable as to Grantee except upon thirty (30) days prior written notice given by the insurer to Grantee. Within ten (10) days prior to the expiration date of each such flood insurance policy, Grantor shall deliver to Grantee a renewal policy or endorsement together with evidence satisfactory to Grantee that the premium therefor has been paid.

   (9)  *Condemnation:* To the extent of the Indebtedness, Grantor grants to Grantee a security interest in any and all payments, awards, judgments or settlements, including interest thereon, to which Grantor may be or may become entitled or which Grantee may receive by reason of injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain. Notwithstanding any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain, Grantor shall continue to pay the Indebtedness. All sums paid or payable to Grantor by reason of any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain shall be delivered to Grantee and Grantee, at Grantee's option and at Grantee's sole discretion, may either

     (i)  apply the sum or any part thereof to the Indebtedness or

     (ii)  require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse such
          sums to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor.

  (10) *Inspection:* Grantor shall permit any person designated by Grantee to visit and inspect and Premises, to examine the books of account and other records of Grantor with respect to the Premises, and to discuss the affairs, finances and accounts of Grantor with and to be advised as to the same by Grantor or a knowledgeable and duly authorized representative of Grantor, all at such reasonable times and intervals as Grantee may desire.

  (11) *Restriction on Transfer:* Unless Grantee gives its written consent thereto and such consent is recorded in the public deed records of the Clerk of the Superior Court of the county in which this Security Deed is recorded, Grantor shall not grant, bargain, convey, transfer, assign, exchange or sell all or any portion of Grantor's interest in the Premises prior to the satisfaction and release by Grantee of this Security Deed. In the event the within described property, or any part thereof, or any interest therein is sold, agreed to be sold, conveyed, assigned or alienated by the Grantor without first having obtained the written consent or approval of the Beneficiary, then, at the Beneficiary's option, all obligations secured by this instrument, irrespective of the maturity dates expressed therein, or herein, shall become immediately due and payable.

  (12) *Compliance:* To comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting said property; if the Beneficiary so requests, to join in executing such financing statements pursuant to the Uniform Commercial Code as the Beneficiary may require and to pay for filing same in the proper public office or offices, as well as the cost of all lien searches made by filing officers or searching agencies as may be deemed desirable by the Beneficiary.

**EVENTS OF DEFAULT** hereunder shall be the occurrence of any one or more of the following:

   (1)  *Payment of Indebtedness:* Failure of Grantor to pay the Indebtedness or any part thereof when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or at a date fixed by reason of acceleration of the due date thereof or otherwise;

   (2)  *Other Payments and Terms:* Failure of Grantor to make any payment (other than on the Indebtedness) required hereunder or to observe, perform, or comply with any of the covenants, terms or conditions set forth herein, or in any other instrument, document, agreement, letter or other writing heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with any transaction which resulted in the Indebtedness or any part thereof;

   (3)  *False Statements:* If any certificate, representation, warranty, statement or other writing made herein or heretofore, now or hereafter furnished to Grantee by or on : behalf of Grantor in connection with any transaction which resulted in the Indebtedness or any part thereof be false, untrue, incomplete or misleading in any respect as of the date made;

   (4)  *Waste:* If the Premises or any part thereof should be subject to actual or threatened waste, or any part thereof be removed, demolished, or materially damaged or altered as a result of which the value of the Premises shall be diminished;

   (5)  *Seizure or Levy:* If the Premises or any part thereof be seized or levied upon under legal process or a receiver be appointed for the Premises or any part thereof or for Grantor;

   (6)  *Liens:* If any Federal tax lien or any claim of lien for labor, material or architectural or engineering services furnished or alleged to have been furnished in the improvement of or with respect to the Premises is filed of record against Grantor or the Premises and is not removed from record by payment or bond within thirty(30) days from the date of such filing;

   (7)  *Priority Claim:* If any person shall assert any claim of priority over this Security Deed in any legal or equitable proceeding, and such claim shall not have been dismissed with prejudice within sixty (60) days after the filing thereof;

   (8)  *Insolvency or Bankruptcy:* If Grantor shall become insolvent or make an assignment for benefit of creditors; or if Grantor should file a petition for bankruptcy or an arrangement pursuant to the Federal Bankruptcy Act or any similar statute; or if Grantor be adjudicated a bankrupt or an insolvent; or if any proceeding is instituted against or on behalf of Grantor alleging that Grantor is insolvent or unable to pay Grantor's debts

Deed Book 46639 Pg 547

as they mature; or if a petition for the bankruptcy or arrangement of Grantor, pursuant to the Federal
Bankruptcy Act or any similar statute is filed;

(9) *Receiver*: If there should be appointed a receiver, liquidator or trustee for Grantor or for any property of
Grantor;

(10) *Judgments*: If any judgment is rendered against Grantor which is not paid in full and satisfied or is not
appealed from within the time allowed for appeals and paid in full and satisfied when it becomes final;

(11) *Liquidation or Dissolution*: Should Grantor, if a corporation, be liquidated or dissolved or its articles of
incorporation expire or be revoked, or, if a partnership or business association, be dissolved or partitioned,
or, if a trust, be terminated or expire.

**GRANTEE'S REMEDIES AND POWER OF SALE** upon the occurrence of an event of default shall be that,
at Grantee's option and election without notice to Grantor, Grantee may declare all or any portion of the
Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable
forthwith without presentment, demand, protest or notice of any kind, all of which are expressly waived by Grantor,
and Grantee, at Grantee's option and election, may do any one or more of the following:

(1) *Entry and Possession*: Grantee may enter upon the Premises or any part thereof and take possession thereof,
excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of
the Premises or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Premises
or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and
replacements; keep the Premises insured; or carry out or enter into agreements of any kind with respect to
the Premises.

(2) *Collection of Rents*: Grantee may collect and receive all rents, issues, income, revenues, profits, accounts
and contract rights from the Premises and apply the same to the Indebtedness, after deducting therefrom all
costs, charges, and expenses of taking, holding, managing, and operating the Premises, including the fees
and expenses of Grantee's attorneys, and agents.

(3) *Payments*: Grantee may pay any sum or sums deemed necessary or appropriate by Grantee to protect the
Premises or any part thereof or Grantee's interest therein.

(4) *Other Remedies*: Grantee may exercise all rights and remedies contained in any other instrument, document,
agreement or other writing, heretofore, concurrently herewith or in the future executed by Grantor in favor
of Grantee in connection with the transactions resulting in the Indebtedness or any part thereof.

(5) *Appointment of Receiver*: Grantee may make application to any court or be entitled to the appointment of a
receiver to take charge of the Premises or any part thereof without alleging or proving, or having any
consideration given to, the insolvency of Grantor, the value of the Premises as security for the Indebtedness
or any other matter usually incident to the appointment of a receiver.

(6) *U.C.C. Remedies*: With respect to the personal property in which a security interest is herein granted,
Grantee may exercise any or all of the rights accruing to a secured party under this Security Deed, the
Uniform Commercial Code (§§109A-9-101 *et. seq.* of the Ga. Code Annotated) and any other applicable
law. Grantor shall, if Grantee requests, assemble all such personal property and make it available to Grantee
at a place or places to be designated by Grantee, which shall be reasonably convenient to Grantor and
Grantee. Any notice required to be given by Grantee of a public or private sale, lease or other disposition
of the personal property or any other intended action by Grantee may be personally delivered to Grantor or
may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of
Grantor last known to Grantee at least five (5) business days prior to such proposed action, and shall
constitute reasonable and fair notice to Grantor of any such action.

(7) *Power of Sale*: Grantee may sell the Premises, or any part thereof or any interest therein separately, at
Grantee's discretion, with or without taking possession thereof, at public sale first giving notice of the time,
place and terms of such sale by advertisement published once a week for four weeks (without regard for the
number of days) in a newspaper in which advertisements of sheriff's sales are published in such county.
The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices.
Grantee may bid and purchase at any such sale, and Grantee may execute and deliver to the purchaser or
purchasers at any such sale a sufficient conveyance of the Premises, or the part thereof or interest therein
sold. Grantee's conveyance may contain recitals as to the occurrence of any event of default under this
Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such
sale and conveyance were in all things duly complied with. The recitals made by Grantee shall be binding
and conclusive upon Grantor, and the sale and conveyance made by Grantee shall divest Grantor of all
right, title, interest and equity that Grantor may have had in, to and under the Premises, or the part thereof
or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Grantee may
hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby
constitutes and appoints Grantee as Grantor's agent and attorney-in-fact to make such sale, to execute and
deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts
and doings of Grantee as Grantor's agent and attorney-in-fact hereunder. Grantee's agency and power as
attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency,
death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The
proceeds of each sale by Grantee hereunder shall be applied first to the costs and expenses of the sale and
the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the
Indebtedness in full, Grantee shall determine, at Grantee's option and in Grantee's discretion, the portions
of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and
all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied.
Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted,
Grantor shall be and become a tenant at sufferance and shall deliver possession of the Premises, or the part
thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in
accordance with the provisions of law applicable to tenants at sufferance.

Deed Book 46639 Pg 548

All rights and remedies set forth above are cumulative and in addition to any right or remedy provided for by statutes, or now or hereafter existing at law or in equity, including without limitation the right of Grantee to collect or enforce the Indebtedness with or without taking any action with respect to the Premises, Grantee may, at Grantee's election and at Grantee's discretion, exercise each and every such right and remedy concurrently or separately. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the proceeds of fire and other insurance policies or compensation or awards for any taking or damage of the property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

ADDITIONAL PROVISIONS of this Security Deed, constituting additional covenants and agreements by Grantor, are as follows:

(1) *Applicable Law*: This Security Deed shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Georgia.

(2) *Forbearance*: Grantee shall not be deemed to waive any of Grantee's rights or remedies hereunder unless such waiver be in writing and signed by or on behalf of Grantee. No delay, omission or forbearance by Grantee in exercising any of Grantee's rights or remedies shall operate as a waiver of such rights or remedies, and a waiver in writing on one occasion shall not be construed as a consent to or a waiver of any right or any remedy on any future occasion.

(3) *Time*: Time is and shall be of the essence of this Security Deed and the covenants and agreements by Grantor.

(4) *Captions*: Any captions or heading preceding the text of separate sections, paragraphs and sub-paragraphs hereof are solely for reference purposes and shall not affect the meaning, construction, interpretation or effect of the text.

(5) *Notices*: All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given to Grantor if personally delivered or if mailed in the United States mail, by certified mail with a return receipt requested and with postage prepaid, to Grantor's last address known to Grantee.

(6) *Severability*: In the event that any of the terms, provisions or covenants of this Security Deed are held to be partially or wholly invalid or unenforceable for any reason whatsoever, such holding shall not affect, alter, modify or impair in any manner whatsoever any of the other terms, provisions or covenants hereof not held to be partially or wholly invalid or unenforceable.

(7) *Definitions*: The word "Grantor" as used herein shall include the plural should more than one Grantor execute this document; the masculine and feminine gender, regardless of the sex of Grantor or any of them; individuals, partnerships, joint ventures, corporations and other legal entities should such an entity execute this document; and the heirs, legal representatives, successors and assigns of Grantor. If more than one party shall execute this Security Deed, the word "Grantor" shall mean all parties signing, and each of them, and each and every agreement and obligation of Grantor shall be and mean the joint and several undertaking of each of them. The word "Grantee" as used herein shall include the transferees, successors, legal representatives and assigns of Grantee, and all rights of Grantee hereunder shall inure to the benefit of its transferees, successors, legal representatives and assigns.

(8) *Renegotiation*: The interest rate, payment terms, or balance due on the Trust Deed and the loan secured thereby, may be indexed, adjusted, renewed, or renegotiated by Grantor and Beneficiary and signed by all parties. This does not constitute an obligation on the part of lender.

GRANTOR EXPRESSLY WAIVES the following:

(1) *Notice and Hearing*: Any right Grantor may have under the Constitution of the State of Georgia or the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Grantee by this Security Deed, and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and

(2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Premises as against the collection of the Indebtedness, or any part thereof. All waivers by Grantor in this paragraph have been voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

IN WITNESS WHEREOF, this Security Deed has been executed and sealed by Grantor the day and year first above written.

Deed Book 46639 Pg 549

Signed, sealed and delivered
in the presence of:

WITNESS

C. B. Morse. J.
Notary Public

SON'S INVESTMENT GROUP LIMITED

BY: _____ (SEAL)
NAME: Alwin K. Peterson
TITLE: CEO

---

Signed, sealed and delivered
in the presence of:

WITNESS

C. B. Morse. J.
Notary Public

SON'S INVESTMENT GROUP LIMITED

BY: _____ (SEAL)
NAME: Samuel L. Hosey Sr.
TITLE: Secretary

---

Signed, sealed and delivered
in the presence of:

WITNESS

C. B. Morse. J.
Notary Public

SON'S INVESTMENT GROUP LIMITED

BY: _____ (SEAL)
NAME: Robert J. Williams
TITLE: CFO

Deed Book 46639 Pg 550

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 13TH
DISTRICT OF FORMERLY CAMPBELL, NOW FULTON COUNTY, GEORGIA, AND BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD
NATIONAL HIGHWAY (50 FOOT RIGHT OF WAY) 650.0 FEET SOUTHEASTERLY, AS MEASURED
ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY FROM THE
INTERSECTION FORMED BY THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL
HIGHWAY WITH THE WEST LINE OF LAND LOT 188; THENCE CONTINUING IN A SOUTHEASTERLY
DIRECTION, ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY,
400.00 FEET TO AN IRON PIN; RUNNING THENCE SOUTH 88 DEGREES 24 MINUTES WEST 518.2 FEET
TO THE WEST LINE OF LAND LOT 188 AS MARKED BY AN IRON PIN; RUNNING THENCE NORTH 01
DEGREE 00 MINUTES EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 00 MINUTES
EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 181.1 FEET TO AN IRON PIN;
RUNNING THENCE NORTH 60 DEGREES 30 MINUTES EAST 382.9 FEET TO THE SOUTHWESTERLY
RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY AT THE POINT OF BEGINNING, BEING
IMPROVED PROPERTY COMPRISING 2.885 ACRES ALL AS SHOWN ON THE HEREINAFTER
DESCRIBED PLAT OF SURVEY.

MORE PARTICULARLY SHOWN AND DELINEATED ON A PLAT OF SURVEY DATED December 19, 1977,
AS PREPARED BY ESTON PENDLEY & ASSOCIATES, INC., REGISTERED LAND SURVEYORS.
REFERENCE IS MADE TO SAID PLAT OF SURVEY FOR A MORE PARTICULAR DESCRIPTION.

LESS AND EXCEPT: ALL THAT TRACT OR PARCEL OF LAND CONDEMNED BY FULTON COUNTY,
PURSUANT TO ORDER DATED MARCH 11, 1981, CONDEMNATION ACTION C-71399, FULTON
SUPERIOR COURT, RECORDED IN BOOK 1078, PAGE 233.

Deed Book 46639 Pg 551
Catheleene Robinson
Clerk of Superior Court
Fulton County, Georgia

EXHIBIT "B"

TRACT 1:

All that tract or parcel of land lying and being in Land Lot 189 of the 13th District, Fulton County, Georgia, being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the northwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence north 86 degrees 14 minutes 55 seconds west 399.89 feet to a right of way monument; running thence south 03 degrees 05 minutes 46 seconds west 14.87 feet to a right of way monument; running thence north 86 degrees 28 minutes 01 second west 38.88 feet to a right of way monument; running thence north 03 degrees 07 minutes 55 seconds east 15.21 feet to a right of way monument; running thence north 88 degrees 45 minutes 54 seconds west 432.67 feet to a right of way monument located on the line dividing Land Lots 189 and 189, said District and County; running thence south 00 degrees 58 minutes 42 seconds west along said Land Lot line a distance of 36.79 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 0.450 acre, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

TRACT 2:

All that tract or parcel of land lying and being in Land Lot 196 of the 13th District, Fulton County, Georgia, and being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the southwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence south 86 degrees 14 minutes 55 seconds east 262.64 feet to a ½" rebar found; running thence south 00 degrees 19 minutes 36 seconds west 261.02 feet to a 1" open top pipe found at the northeast corner of property now or formerly owned by Mary Lankford (DB 16002, page 195), Fulton County records); running thence north 89 degrees 20 minutes 30 seconds west along the northerly lines of properties now or formerly owned by Mary Lankford, Ernest Page (DB 22074, page 287), Elica Morris, Willie Howell (DB 40570, page 562), Alvin Morris (DB 32450, page 486), Rodney Vance (DB 32650, page 65), Gerald Vowell (DB 11620, page 97), and Monthesinos Family a total distance of 1,139.73 feet to the line dividing Land Lots 195 and 196, said District and County; running thence north 01 degree 43 minutes 56 seconds east along said Land Lot line a distance of 266.67 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 7.019 acres, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

**EXHIBIT E.  Second Security Deed**

RETURN TO:
SHUPING, MORSE & ROSS
6259 Riverdale Road
Riverdale, GA 30274-1698
10-0003 Sons Investment Grp

Sons Investment Group Limited,
Grantor

Grantor's Address
130 Walden Way
Fayetteville, GA 30214

Watch Tower Bible and Tract
Society of Pennsylvania, Beneficiary
Beneficiary's Address
c/o Fairfield Financial Services, Inc.
16055 SW Walker Rd. #247
Beaverton, OR 97006

After recording return to:
Fairfield Financial Services, Inc.
16055 SW Walker Rd. #247
Beaverton, OR 97006

Deed Book 50000 Pg  351
Filed and Recorded Apr-19-2011 07:36am
2011-0110261
Georgia Intangible Tax Paid $0.00
Catherene Robinson
Clerk of Superior Court
Fulton County, Georgia

**STATE OF GEORGIA**
**COUNTY OF FULTON**

### SECURITY DEED AND AGREEMENT

**THIS INDENTURE** is made this 29th day of March , 2011, by and between

Sons Investment Group Limited

party of the first part, hereinafter referred to as "Grantor"; and

Watch Tower Bible and Tract Society of Pennsylvania

party of the second part, hereinafter referred to as "Grantee", whose address is

c/o Fairfield Financial Services, Inc., 16055 SW Walker Rd. #247, Beaverton, OR 97006

### WITNESSETH

**FOR AND IN CONSIDERATION** of the financial accommodations to Grantor by Grantee resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells unto Grantee the following described land:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 13TH DISTRICT OF FORMERLY CAMPBELL, NOW FULTON COUNTY, GEORGIA, AND BEING KNOWN AS 7335 OLD NATIONAL HIGHWAY RIVERDALE, GA 30296 AND MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

ADDITIONAL COLLATERAL - JONESBORO ROAD PROPERTY

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 189 AND 196 OF THE 13TH DISTRICT, FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

TOGETHER WITH ANY AND ALL of the following:

(i) all buildings, structures and other improvements now or hereafter located thereon or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto;
(ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof;
(iii) all rents, issues, income, revenues and profits accruing therefrom whether now or hereafter due;
(iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon;
(v) all minerals, flowers, crops, trees, timber, shrubbery and other embalments now or hereafter located thereon or thereunder or on or under any part or parcel thereof;
(vi) all estates, rights, title and interest therein, or in any part or parcel thereof;

Deed Book 50000 Pg  352

(vii) all equipment, machinery, apparatus, fittings, fixtures whether actually or constructively attached thereto and including all trade, domestic and ornamental fixtures, furniture, furnishings and all personal property of every kind or description whatsoever nor or hereafter located thereon, or in or on the buildings, structures and other improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and

(viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.  All of the foregoing are hereinafter sometimes referred to collectively as the "Premises."

TO HAVE AND HOLD the Premises to the only proper use, benefit and behoof of Grantee, forever, in fee simple.

GRANTOR WARRANTS that Grantor has good title to the Premises, that Grantor is lawfully seized and possessed of the Premises, that Grantor has the right to convey the Premises, that the Premises are unencumbered except as may be herein expressly provided and that Grantor shall forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

THIS INSTRUMENT IS A DEED passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and a security agreement granting a security interest pursuant to the Uniform Commercial Code of the State of Georgia, and it is not a mortgage.  This deed and security agreement is made and intended to secure:

(i) an obligation of Grantor to Grantee evidenced as follows:
One Promissory Note in the original principal amount of $228,500, which Promissory Note is due and payable in full no later than __DECEMBER 29, 2011_____ .

(ii) any and all renewal or renewals, extension or extensions, modification or modifications thereof, and substitution or substitutions therefor, either in whole or in part; and

The obligations which this deed and security agreement is given to secure are hereinafter sometimes referred to collectively as the "Indebtedness."  This deed and security agreement is hereinafter sometimes referred to as this "Security Deed."

## GRANTOR COVENANTS AND AGREES:

(1) *Junior Encumbrances*: Grantor shall not, without consent of the Beneficiary, create or permit to exist any liens or encumbrances on the Premises which are junior and inferior in terms of priority to this Security Deed.

(2) *Payments by Grantor*: Grantor shall pay, when due and payable:
   (i) the Indebtedness in accordance with the terms and conditions of the instruments evidencing the same;
   (ii) all taxes, all assessments, general or special, and all other charges levied on or assessed or placed or made against the Premises, this Security Deed, the Indebtedness or any interest of Grantee in the Premises, this Security Deed or the Indebtedness;
   (iii) premiums on policies of fire and casualty insurance covering the Premises, as required by this Security Deed;
   (iv) premiums on all life insurance policies now or hereafter pledged as collateral for the Indebtedness or any part thereof;
   (v) premiums for all liability, rental, mortgage and flood insurance policies required by this Security Deed or now or hereafter required by Grantee in connection with the Premises or the Indebtedness or any part of either; and
   (vi) all ground rents, lease rentals and other payments respecting the Premises payable by Grantor.  Grantor shall promptly deliver to Grantee, upon request by Grantee, receipts showing payment in full of all the foregoing items; provided, however, that Grantee shall not require a receipt showing payment in full of the Indebtedness.  In the event any state, federal, municipal or other governmental law, order, rule or regulation becomes effective subsequent to the date hereof and in any manner changes or modifies the laws in force on the date hereof governing the taxation of the Indebtedness or the manner of collecting the taxes thereon so as to adversely affect Grantee by requiring that a payment or payments be made or other action be taken to protect Grantee's interest under this Security Deed or the Indebtedness, Grantor shall promptly pay any amounts required on or before the date the same are due or take any other action required on or before the date any such action must be taken.

(3) *Grantee's Acts on Behalf of Grantor*: In the event Grantor shall either fail or refuse to pay or cause to be paid, as the same shall become due and payable, any item (including all items specified at Paragraph (2) immediately above) which Grantor is required to pay hereunder or which Grantor may pay to cure an event of default hereunder, or in the event Grantor shall either fail or refuse to do or perform any act which Grantor is obligated to do or perform hereunder or which Grantor may do or perform to cure an event of default hereunder, then Grantee, at Grantee's option, may make such payment or do or perform such act on behalf of Grantor.  All such payments made by Grantee and all costs and expenses incurred by Grantee in doing or performing all such acts shall be and shall become part of the Indebtedness secured hereby and shall bear interest at the highest rate per annum then being charged with respect to any part of the indebtedness secured hereby from the date paid or incurred by Grantee, and such interest thereon shall also be part of the Indebtedness secured hereby.

(4) *Further Assurances*: Grantor shall, at any time and from time to time upon request by Grantee, make, execute and deliver, or cause to be made, executed and delivered, any and all other and further instruments, documents, certificates, agreements, letters, representations and other writings which may be necessary or desirable, in the opinion of Grantee, in order to effectuate, complete, correct, perfect or continue and preserve the obligations of Grantor under the Indebtedness and the lien and security interest of Grantee

Deed Book 50000 Pg  353

hereunder. Grantor shall upon request by Grantee certify in writing to Grantee, or to any proposed assignee of this Security Deed, the amount of principal and interest then owing on the Indebtedness and whether or not any set-offs or defenses exist against all or any part of the Indebtedness.

(5) *Rents and Leases*: Grantor hereby transfers, assigns and conveys unto Grantee all of Grantor's right, title and interest in and to all leases or undertakings to lease now or hereafter existing or made, and all other agreements for use or occupancy, with respect to the Premises or any part thereof, and grants to Grantee a security interest in all rents, issues, income, revenues, profits, accounts and contract rights due or to become due thereunder or otherwise deriving from the use and occupancy of the Premises. Grantor shall faithfully perform the covenants of Grantor as lessor under all present and future leases of all or any portion of the Premises and shall not do, neglect to do, or permit to be done, anything which may cause the termination of such leases, or any of them, or which may diminish or impair their value or the rents provided for therein or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee, shall not further assign the rents, issues, income, revenues, profits, accounts or contract rights from the Premises or any part thereof, shall not consent to the cancellation or surrender of any lease of the Premises or any part thereof now existing or hereafter to be made, shall not modify any such lease so as to shorten the unexpired term thereof or so as to decrease the amount of the rent payable thereunder and shall not collect rents from the Premises or any part thereof for more than one month in advance. Grantor shall procure and deliver to Grantee upon request estoppel letters or certificates from each lessee, tenant, occupant in possession and other user of the Premises or any part thereof, as required by and in form and substance satisfactory to Grantee, and shall deliver to Grantee a recordable assignment of all of Grantor's interest in all leases now or hereafter existing or made with respect to the Premises or any part thereof, as required by and in form and substance satisfactory to Grantee, together with proof of due service of a copy of such assignment on each lessee, tenant, occupant in possession or other user of the Premises or any part thereof.

(6) *Maintenance and Repair*: Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances, rule, regulations and directives of any governmental authority relating to the Premises or any part thereof or the use or occupancy of the Premises or any part thereof. No part of the Premises, including but not limited to any buildings, structures, parking lots, driveways or other improvements now or hereafter constructed on the land which is part of the Premises, shall be removed, demolished or materially altered without the prior written consent of Grantee. If at any time during the continuance of the Indebtedness any addition, alteration, change, repair, reconstruction or other work on the Premises of any nature, structural or otherwise, becomes necessary or desirable because of damage to or destruction of the Premises or any part thereof, the entire expense thereof, regardless of when the same shall be incurred or become due, shall be the sole obligation and responsibility of Grantor, and Grantor shall pay the entire expense thereof promptly when due.

(7) *Hazard and Liability Insurance*: Grantor shall keep the Premises insured against loss or damage by fire and such other casualties and risks as the Grantee may require from time to time, with such companies, in such amounts and under such forms of policies as Grantee may approve. Such policies shall insure Grantee's interest in the Premises, name Grantee as an insured party thereunder, provide that losses thereunder shall be payable to Grantee pursuant to such forms of loss payable clauses as Grantee may approve and provide that no cancellation or reduction in coverage shall be effective unless the insurer first gives Grantee thirty (30) days prior written notice. Irrespective of the insurance required and approved by Grantee. Grantor shall assign and deliver to Grantee, as additional collateral for the payment of the Indebtedness, all policies of insurance which insure against loss or damage to the Premises, and Grantor hereby grants to Grantee a security interest in the proceeds from any and all such policies. Grantor shall also procure and maintain public liability insurance coverage with such companies, in such amounts and under such forms of policies as Grantee may approve, naming Grantee as an additional insured thereunder and providing that no cancellation or reduction in coverage thereunder shall be effective unless the insurer first gives Grantee thirty (30) days prior written notice. Forthwith upon the issuance of all such policies, Grantor shall deliver the same to Grantee together with evidence satisfactory to Grantee that the premiums therefor have been paid. Within fifteen (15) days prior to the expiration date of each such policy, Grantor shall deliver to Grantee a renewal policy together with evidence satisfactory to Grantee that the premium therefor has been paid. In the event of a foreclosure and sale by Grantee of the Premises, the purchaser of the Premises shall succeed to all rights of Grantor in and to such policies, including the right to the refund of unearned premiums and to dividends thereunder, and Grantee may, at Grantee's election, assign and deliver the policies to such purchaser without any warranty or representation, express or implied, and without recourse. In the event of damage to or destruction of the Premises or any part thereof, Grantee may adjust, settle or compromise claims under such policies, and the proceeds therefrom shall be paid to Grantee. Grantee, at Grantee's option and in Grantee's sole discretion, may either
   (i) apply the proceeds or any part thereof to the Indebtedness or
   (ii) require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse the proceeds to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor.

(8) *Flood Insurance*: Grantor represents and has certified to Grantee that no part of the Premises lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973. In the event Grantee determines that the rules or regulations of the Federal Reserve Board, the Comptroller of the Currency or any other governing agency licensing or regulating the operations of Grantee require that flood insurance coverage be obtained for the Premises or any part thereof in order for Grantee to comply with such rules or regulations or with the Flood Disaster Protection Act of 1973 as then in effect, then Grantor, upon receiving written notice from Grantee of such determination:
   (i) shall promptly purchase and pay the premiums for such flood insurance policies as Grantee deems required by such agency or agencies so that Grantee shall be deemed in compliance with the rules and

Deed Book 50000 Pg 354

regulations of such agency or agencies and with the Flood Disaster Protection Act of 1973 as then in effect; and
(ii) shall deliver such policies to Grantee together with evidence satisfactory to Grantee that the premiums therefor have been paid.

Such policies of flood insurance shall be in a form satisfactory to Grantee, shall name Grantee as an insured thereunder, shall provide that losses thereunder be payable to Grantee pursuant to such forms of loss payable clause as Grantee may approve, shall be for an amount at least equal to the Indebtedness or the maximum limit of coverage made available with respect to the Premises under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancellable as to Grantee except upon thirty (30) days prior written notice given by the insurer to Grantee. Within ten (10) days prior to the expiration date of each such flood insurance policy, Grantor shall deliver to Grantee a renewal policy or endorsement together with evidence satisfactory to Grantee that the premium therefor has been paid.

(9) *Condemnation*: To the extent of the Indebtedness, Grantor grants to Grantee a security interest in any and all payments, awards, judgments or settlements, including interest thereon, to which Grantor may be or may become entitled or which Grantee may receive by reason of injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain. Notwithstanding any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain, Grantor shall continue to pay the Indebtedness. All sums paid or payable to Grantor by reason of any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain shall be delivered to Grantee and Grantee, at Grantee's option and at Grantee's sole discretion, may either
(i) apply the sum or any part thereof to the Indebtedness or
(ii) require Grantor to repair, replace or reconstruct the Premises or any part thereof and disburse such sums to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor.

(10) *Inspection*: Grantor shall permit any person designated by Grantee to visit and inspect and Premises, to examine the books of account and other records of Grantor with respect to the Premises, and to discuss the affairs, finances and accounts of Grantor with and to be advised as to the same by Grantor or a knowledgeable and duly authorized representative of Grantor, all at such reasonable times and intervals as Grantee may desire.

(11) *Restriction on Transfer*: Unless Grantee gives its written consent thereto and such consent is recorded in the public deed records of the Clerk of the Superior Court of the county in which this Security Deed is recorded, Grantor shall not grant, bargain, convey, transfer, assign, exchange or sell all or any portion of Grantor's interest in the Premises prior to the satisfaction and release by Grantee of this Security Deed. In the event the within described property, or any part thereof, or any interest therein is sold, agreed to be sold, conveyed, assigned or alienated by the Grantor without first having obtained the written consent or approval of the Beneficiary, then, at the Beneficiary's option, all obligations secured by this instrument, irrespective of the maturity dates expressed therein, or herein, shall become immediately due and payable.

(12) *Compliance*: To comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting said property; if the Beneficiary so requests, to join in executing such financing statements pursuant to the Uniform Commercial Code as the Beneficiary may require and to pay for filing same in the proper public office or offices, as well as the cost of all lien searches made by filing officers or searching agencies as may be deemed desirable by the Beneficiary.

**EVENTS OF DEFAULT** hereunder shall be the occurrence of any one or more of the following:

(1) *Payment of Indebtedness*: Failure of Grantor to pay the Indebtedness or any part thereof when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or at a date fixed by reason of acceleration of the due date thereof or otherwise;

(2) *Other Payments and Terms*: Failure of Grantor to make any payment (other than on the Indebtedness) required hereunder or to observe, perform, or comply with any of the covenants, terms or conditions set forth herein, or in any other instrument, document, agreement, letter or other writing heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with any transaction which resulted in the Indebtedness or any part thereof;

(3) *False Statements*: If any certificate, representation, warranty, statement or other writing made herein or heretofore, now or hereafter furnished to Grantee by or on  behalf of Grantor in connection with any transaction which resulted in the Indebtedness or any part thereof be false, untrue, incomplete or misleading in any respect as of the date made;

(4) *Waste*: If the Premises or any part thereof should be subject to actual or threatened waste, or any part thereof be removed, demolished, or materially damaged or altered as a result of which the value of the Premises shall be diminished;

(5) *Seizure or Levy*: If the Premises or any part thereof be seized or levied upon under legal process or a receiver be appointed for the Premises or any part thereof or for Grantor;

(6) *Liens*: If any Federal tax lien or any claim of lien for labor, material or architectural or engineering services furnished or alleged to have been furnished in the improvement of or with respect to the Premises is filed of record against Grantor or the Premises and is not removed from record by payment or bond within thirty(30) days from the date of such filing;

(7) *Priority Claim*: If any person shall assert any claim of priority over this Security Deed in any legal or equitable proceeding, and such claim shall not have been dismissed with prejudice within sixty (60) days after the filing thereof;

(8) *Insolvency or Bankruptcy*: If Grantor shall become insolvent or make an assignment for benefit of creditors; or if Grantor should file a petition for bankruptcy or an arrangement pursuant to the Federal Bankruptcy Act or any similar statute, or if Grantor be adjudicated a bankrupt or an insolvent; or if any proceeding is instituted against or on behalf of Grantor alleging that Grantor is insolvent or unable to pay Grantor's debts

Deed Book 50000 Pg   355

as they mature; or if a petition for the bankruptcy or arrangement of Grantor, pursuant to the Federal Bankruptcy Act or any similar statute is filed;

(9) *Receiver*: If there should be appointed a receiver, liquidator or trustee for Grantor or for any property of Grantor;

(10) *Judgments*: If any judgment is rendered against Grantor which is not paid in full and satisfied or is not appealed from within the time allowed for appeals and paid in full and satisfied when it becomes final;

(11) *Liquidation or Dissolution*: Should Grantor, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire.

**GRANTEE'S REMEDIES AND POWER OF SALE** upon the occurrence of an event of default shall be that, at Grantee's option and election without notice to Grantor, Grantee may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment, demand, protest or notice of any kind, all of which are expressly waived by Grantor, and Grantee, at Grantee's option and election, may do any one or more of the following:

(1) *Entry and Possession*: Grantee may enter upon the Premises or any part thereof and take possession thereof, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Premises or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Premises or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Premises insured; or carry out or enter into agreements of any kind with respect to the Premises.

(2) *Collection of Rents*: Grantee may collect and receive all rents, issues, income, revenues, profits, accounts and contract rights from the Premises and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Premises, including the fees and expenses of Grantee's attorneys, and agents.

(3) *Payments*: Grantee may pay any sum or sums deemed necessary or appropriate by Grantee to protect the Premises or any part thereof or Grantee's interest therein.

(4) *Other Remedies*: Grantee may exercise all rights and remedies contained in any other instrument, document, agreement or other writing, heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with the transactions resulting in the Indebtedness or any part thereof.

(5) *Appointment of Receiver*: Grantee may make application to any court or be entitled to the appointment of a receiver to take charge of the Premises or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Premises as security for the Indebtedness or any other matter usually incident to the appointment of a receiver.

(6) *U.C.C. Remedies*: With respect to the personal property in which a security interest is herein granted, Grantee may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (§§109A-9-101 *et. seq.* of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Grantee requests, assemble all such personal property and make it available to Grantee at a place or places to be designated by Grantee, which shall be reasonably convenient to Grantor and Grantee. Any notice required to be given by Grantee of a public or private sale, lease or other disposition of the personal property or any other intended action by Grantee may be personally delivered to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Grantee at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

(7) *Power of Sale*: Grantee may sell the Premises, or any part thereof or any interest therein separately, at Grantee's discretion, with or without taking possession thereof, at public sale first giving notice of the time, place and terms of such sale by advertisement published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Grantee may bid and purchase at any such sale, and Grantee may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Premises, or the part thereof or interest therein sold. Grantee's conveyance may contain recitals as to the occurrence of any event of default under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Grantee shall be binding and conclusive upon Grantor, and the sale and conveyance made by Grantee shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Premises, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Grantee may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Grantee as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Grantee as Grantor's agent and attorney-in-fact hereunder. Grantee's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Grantee hereunder shall be applied first to the costs and expenses of the sale and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Grantee shall determine, at Grantee's option and in Grantee's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant at sufferance and shall deliver possession of the Premises, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants at sufferance.

Deed Book 50000 Pg  356

All rights and remedies set forth above are cumulative and in addition to any right or remedy provided for by statutes, or now or hereafter existing at law or in equity, including without limitation the right of Grantee to collect or enforce the Indebtedness with or without taking any action with respect to the Premises, Grantee may, at Grantee's election and at Grantee's discretion, exercise each and every such right and remedy concurrently or separately. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the proceeds of fire and other insurance policies or compensation or awards for any taking or damage of the property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**ADDITIONAL PROVISIONS** of this Security Deed, constituting additional covenants and agreements by Grantor, are as follows:

(1) *Applicable Law*: This Security Deed shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of Georgia.

(2) *Forbearance*: Grantee shall not be deemed to waive any of Grantee's rights or remedies hereunder unless such waiver be in writing and signed by or on behalf of Grantee. No delay, omission or forbearance by Grantee in exercising any of Grantee's rights or remedies shall operate as a waiver of such rights or remedies, and a waiver in writing on one occasion shall not be construed as a consent to or a waiver of any right or any remedy on any future occasion.

(3) *Time*: Time is and shall be of the essence of this Security Deed and the covenants and agreements by Grantor.

(4) *Captions*: Any captions or heading preceding the text of separate sections, paragraphs and sub-paragraphs hereof are solely for reference purposes and shall not affect the meaning, construction, interpretation or effect of the text.

(5) *Notices*: All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given to Grantor if personally delivered or if mailed in the United States mail, by certified mail with a return receipt requested and with postage prepaid, to Grantor's last address known to Grantee.

(6) *Severability*: In the event that any of the terms, provisions or covenants of this Security Deed are held to be partially or wholly invalid or unenforceable for any reason whatsoever, such holding shall not affect, alter, modify or impair in any manner whatsoever any of the other terms, provisions or covenants hereof not held to be partially or wholly invalid or unenforceable.

(7) *Definitions*: The word "Grantor" as used herein shall include the plural should more than one Grantor execute this document; the masculine and feminine gender, regardless of the sex of Grantor or any of them; individuals, partnerships, join ventures, corporations and other legal entities should such an entity execute this document; and the heirs, legal representatives, successors and assigns of Grantor. If more than one party shall execute this Security Deed, the word "Grantor" shall mean all parties signing, and each of them, and each and every agreement and obligation of Grantor shall be and mean the joint and several undertaking of each of them. The word "Grantee" as used herein shall include the transferees, successors, legal representatives and assigns of Grantee, and all rights of Grantee hereunder shall inure to the benefit of its transferees, successors, legal representatives and assigns.

(8) *Renegotiation*: The interest rate, payment terms, or balance due on the Trust Deed and the loan secured thereby, may be indexed, adjusted, renewed, or renegotiated by Grantor and Beneficiary and signed by all parties. This does not constitute an obligation on the part of lender.

GRANTOR EXPRESSLY WAIVES the following:

(1) *Notice and Hearing*: Any right Grantor may have under the Constitution of the State of Georgia or the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Grantee by this Security Deed, and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and

(2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Premises as against the collection of the Indebtedness, or any part thereof. All waivers by Grantor in this paragraph have been voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**IN WITNESS WHEREOF,** this Security Deed has been executed and sealed by Grantor the day and year first above written.

Deed Book 50000 Pg 357

Signed, sealed and delivered
in the presence of:

WITNESS

Notary Public

SON'S INVESTMENT GROUP LIMITED

BY: _____ (SEAL)
NAME: Alwin K. Peterson
TITLE: CEO



Signed, sealed and delivered
in the presence of:

WITNESS

Notary Public

SON'S INVESTMENT GROUP LIMITED

BY: _____ (SEAL)
NAME: Samuel J. Hosey Sr.
TITLE: Secretary

Signed, sealed and delivered
in the presence of:

WITNESS

Notary Public

SON'S INVESTMENT GROUP LIMITED

BY: _____ (SEAL)
NAME: Robert J. Williams
TITLE: CFO



Deed Book **50000** Pg  358

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 188 OF THE 13TH
DISTRICT OF FORMERLY CAMPBELL, NOW FULTON COUNTY, GEORGIA, AND BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD
NATIONAL HIGHWAY (50 FOOT RIGHT OF WAY) 650.0 FEET SOUTHEASTERLY, AS MEASURED
ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY FROM THE
INTERSECTION FORMED BY THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL
HIGHWAY WITH THE WEST LINE OF LAND LOT 188; THENCE CONTINUING IN A SOUTHEASTERLY
DIRECTION, ALONG THE SOUTHWESTERLY RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY,
400.00 FEET TO AN IRON PIN; RUNNING THENCE SOUTH 88 DEGREES 24 MINUTES WEST 518.2 FEET
TO THE WEST LINE OF LAND LOT 188 AS MARKED BY AN IRON PIN; RUNNING THENCE NORTH 01
DEGREE 00 MINUTES EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 00 MINUTES
EAST, ALONG THE WEST LINE OF LAND LOT 188, A DISTANCE OF 181.1 FEET TO AN IRON PIN;
RUNNING THENCE NORTH 60 DEGREES 30 MINUTES EAST 382.9 FEET TO THE SOUTHWESTERLY
RIGHT OF WAY LINE OF OLD NATIONAL HIGHWAY AT THE POINT OF BEGINNING, BEING
IMPROVED PROPERTY COMPRISING 2.885 ACRES ALL AS SHOWN ON THE HEREINAFTER
DESCRIBED PLAT OF SURVEY.

MORE PARTICULARLY SHOWN AND DELINEATED ON A PLAT OF SURVEY DATED December 19, 1977,
AS PREPARED BY ESTON PENDLEY & ASSOCIATES, INC., REGISTERED LAND SURVEYORS.
REFERENCE IS MADE TO SAID PLAT OF SURVEY FOR A MORE PARTICULAR DESCRIPTION.

LESS AND EXCEPT: ALL THAT TRACT OR PARCEL OF LAND CONDEMNED BY FULTON COUNTY,
PURSUANT TO ORDER DATED MARCH 11, 1981, CONDEMNATION ACTION C-71399, FULTON
SUPERIOR COURT, RECORDED IN BOOK 1078, PAGE 233.

Deed Book **50000** Pg **359**
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

EXHIBIT "B"

TRACT 1:

All that tract or parcel of land lying and being in Land Lot 189 of the 13th District, Fulton County, Georgia, being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the northwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence north 86 degrees 14 minutes 55 seconds west 399.89 feet to a right of way monument; running thence south 03 degrees 05 minutes 46 seconds west 14.87 feet to a right of way monument; running thence north 86 degrees 28 minutes 01 second west 38.88 feet to a right of way monument; running thence north 03 degrees 07 minutes 55 seconds east 15.21 feet to a right of way monument; running thence north 88 degrees 45 minutes 54 seconds west 432.67 feet to a right of way monument located on the line dividing Land Lots 189 and 189, said District and County; running thence south 00 degrees 58 minutes 42 seconds west along said Land Lot line a distance of 36.79 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 0.450 acre, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

TRACT 2:

All that tract or parcel of land lying and being in Land Lot 196 of the 13th District, Fulton County, Georgia, and being more particularly described as follows:

BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the southwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence south 86 degrees 14 minutes 55 seconds east 262.64 feet to a ½" rebar found; running thence south 00 degrees 19 minutes 36 seconds west 261.02 feet to a 1" open top pipe found at the northeast corner of property now or formerly owned by Mary Lankford (DB 16002, page 195), Fulton County records); running thence north 89 degrees 20 minutes 30 seconds west along the northerly lines of properties now or formerly owned by Mary Lankford, Ernest Page (DB 22074, page 287), Elica Morris, Willie Howell (DB 40570, page 562), Alvin Morris (DB 32450, page 486), Rodney Vance (DB 32650, page 65), Gerald Vowell (DB 11620, page 97), and Monthesinos Family a total distance of 1,139.73 feet to the line dividing Land Lots 195 and 196, said District and County; running thence north 01 degree 43 minutes 56 seconds east along said Land Lot line a distance of 266.67 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 7.019 acres, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

**EXHIBIT F.  Assignment of First Security Deed**

Deed Book 57598 Pg    65
Filed and Recorded Jun-12-2017 03:17pm
2017-0198900
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

When recorded mail to:
Pamela L. Coleman, Esq.
Hall Booth Smith, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303-1775

## ASSIGNMENT OF SECURITY DEED

STATE OF NEW YORK
COUNTY OF ORANGE

FOR VALUE RECEIVED, the undersigned, **WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA**, a Pennsylvania nonprofit corporation described in section 501(c)(3) of the Internal Revenue Code of 1986, as Assignor, does hereby transfer, assign, sell, convey, and set over unto **ONH HOLDINGS, LLC**, with a mailing address of 10 Bay Circle South, Dover, Delaware, as Assignee, its successors, representatives, and assigns, all the Assignor's rights, title, and interest in and to a certain Security Deed executed by Sons Investment Group Limited to Assignor, dated April 21, 2008, recorded in Deed Book 46639, Page 543, Fulton County, Georgia Records, and all other documents executed in connection therewith.

Assignor specifically transfers, conveys, sells, and assigns to the Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby, together with all the powers, options, privileges and immunities therein contained.

Assignor has this day assigned to the Assignee, by separate assignment, the promissory note secured by the aforesaid Security Deed; and this Assignment is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

This Assignment shall be binding upon the undersigned, its successors, legal representatives and assigns, and shall inure to the benefit of ONH Holdings, LLC, its successors, legal representatives, and assigns.

IN WITNESS WHEREOF, the undersigned, acting by and through its duly authorized officers, has caused this Assignment to be executed under seal, this 7th day of June , 2017.

*[Signature Page Following]*

Deed Book 57598 Pg    66
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

**WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA**

Signed, sealed, and delivered in the
presence of:

_____
Unofficial Witness

By: _____ (SEAL)
Name: **ROBERT L. CIRANKO**
Title:   President

_____
Notary Public
Commission Expiration Date:
[NOTARIAL SEAL]

BRIAN A. DIGGS
Notary Public, State of New York
No. 01DI6118563
Qualified In Orange County
Commission Expires Nov. 15, 20 _20_

_____
Unofficial Witness

By: _____ (SEAL)
Name: **DANNY L. BLAND**
Title:   Treasurer

_____
Notary Public
Commission Expiration Date:
[NOTARIAL SEAL]

BRIAN A. DIGGS
Notary Public, State of New York
No. 01DI6118563
Qualified In Orange County
Commission Expires Nov. 15, 20 _20_

**EXHIBIT G.  Assignment of Second Security Deed**

Deed Book 57598 Pg    67
Filed and Recorded Jun-12-2017 03:17pm
2017-0198901
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

When recorded mail to:
Pamela L. Coleman, Esq.
Hall Booth Smith, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303-1775

## ASSIGNMENT OF SECURITY DEED

STATE OF NEW YORK
COUNTY OF ORANGE

FOR VALUE RECEIVED, the undersigned, **WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA**, a Pennsylvania nonprofit corporation described in section 501(c)(3) of the Internal Revenue Code of 1986, as Assignor, does hereby transfer, assign, sell, convey, and set over unto **ONH HOLDINGS, LLC**, with a mailing address of 10 Bay Circle South, Dover, Delaware, as Assignee, its successors, representatives, and assigns, all the Assignor's rights, title, and interest in and to a certain Security Deed executed by Sons Investment Group Limited to Assignor, dated March 29, 2011, recorded in Deed Book 50000, Page 351, Fulton County, Georgia Records, and all other documents executed in connection therewith.

Assignor specifically transfers, conveys, sells, and assigns to the Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby, together with all the powers, options, privileges and immunities therein contained.

Assignor has this day assigned to the Assignee, by separate assignment, the promissory note secured by the aforesaid Security Deed; and this Assignment is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

This Assignment shall be binding upon the undersigned, its successors, legal representatives and assigns, and shall inure to the benefit of ONH Holdings, LLC, its successors, legal representatives, and assigns.

IN WITNESS WHEREOF, the undersigned, acting by and through its duly authorized officers, has caused this Assignment to be executed under seal, this 7th day of June, 2017.

*[Signature Page Following]*

Deed Book 57598 Pg   68
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

**WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA**

Signed, sealed, and delivered in the
presence of:

_____
Unofficial Witness

_____
Notary Public
Commission Expiration Date:
[NOTARIAL SEAL]

By: _____ (SEAL)
Name: **ROBERT L. CIRANKO**
Title:   President

BRIAN A. DIGGS
Notary Public, State of New York
No. 01DI6118563
Qualified in Orange County
Commission Expires Nov. 15, 20 _20_

_____
Unofficial Witness

_____
Notary Public
Commission Expiration Date:
[NOTARIAL SEAL]

By: _____ (SEAL)
Name: **DANNY L. BLAND**
Title:   Treasurer

BRIAN A. DIGGS
Notary Public, State of New York
No. 01DI6118563
Qualified in Orange County
Commission Expires Nov. 15, 20 _20_

**EXHIBIT H.  Foreclosure Advertisement**

# NOTICE OF SALE UNDER POWER

CATEGORY
Mrtge Foreclsre GA
AD NUMBER
0000364449-01
STATE OF GEORGIA
COUNTY OF FULTON
THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE. Under and by virtue of the rights, remedies, and Powers of Sale contained in (i) that certain Security
Deed and Agreement dated March 29, 2011 (the "2011 Security Deed") from SONS INVESTMENT GROUP LIMITED, held by ONH
HOLDINGS, LLC by Assignment of Security Deed filed of record on June 12, 2017 and recorded in Deed Book 57598, Page 67, records of
Fulton County, Georgia, said 2011 Security Deed having been given to secure a Promissory Note, dated March 29, 2011, with an original
principal amount of $228,500.00, and any and all renewals, extensions, modifications, and substitutions ther of, either in whole or in part, and
any and all other indebtedness contained in any other instrument, document, agreement, or writing executed in connection with the transactions
that resulted in the obligations secured under said security deed, including Amendment to Promissory Note of same date in the original
principal amount of $3,290,000.00, with interest from date at the rate stated in said Promissory Note and Amendment to Promissory Note, of
the unpaid balances until paid, and (ii) that certain Security Deed and Agreement dated April 21, 2008 (the "2008 Security Deed") from SONS
INVESTMENT GROUP LIMITED, held by ONH HOLDINGS, LLC by Assignment of Security Deed, filed of record on June 12, 2017, and
recorded in Deed Book 57598, Page 65, records of Fulton County, Georgia, said 2008 Security Deed having been given to secure a Promissory
Note, dated April 21, 2008, with an original principal amount of $3,290,000.00, and all renewals, extensions, modifications, and substitutions
thereof, either in whole or in part, including Amendment to Promissory Note, dated
March 29, 2011, and any and all other indebtedness contained in any other instrument, document, agreement, or writing executed in connection
with the transactions that resulted in the obligations secured under said security deed, with interest from date at the rate stated in said
Promissory Note and/or renewal, extension, modification or substitution thereof, of the unpaid balance until paid, there will be sold by the
undersigned at public outcry to the highest bidder for cash or certified funds before the Courthouse door of Fulton County, Georgia, located at
136 Pryor Street, Southwest, Atlanta, Georgia 30303, within the legal hours of sale on the first Wednesday in January, 2019, pursuant to
O.C.G.A. § 9-13-161 (the first Tuesday in January 2019 being New Year's Day), the following properties:
Property commonly known as 7335 Old National Highway, Riverdale, Georgia 30296, being more specifically described in Deed Book 46639,
Page 543, and Deed Book 50000, Page 351, Fulton County, Georgia Records as:
All that tract or parcel of land lying and being in land lot 188 of the 13th district of formerly Campbell, now Fulton county, Georgia, and being
more particularly described as follows: Beginning at an iron pin located on the southwesterly right of way line of old national highway (50 foot
right of way) 650.0 feet southeasterly, as measured along the southwesterly right of way line of old national highway from the intersection
formed by the southwesterly right of way line of old national highway with the west line of land lot 188; thence continuing in a southeasterly
direction, along the southwesterly right of way line of old national highway, 400.00 feet to an iron pin; running thence south 88 degrees 24
minutes west 518.2 feet to the west line of land lot 188 as marked by an iron pin; running thence north 01 degree 00 minutes east, along the
west line of land lot 188, a distance of 00 minutes east, along the west line of land lot 188, a distance of 181.1 feet to an iron pin; running
thence north 60 degrees 30 minutes east 382.9 feet to the southwesterly right of way line of Old National Highway at the point of beginning,
being improved property comprising 2.885 acres all as shown on the hereinafter described plat of survey. More particularly shown and
delineated on a plat of survey dated December 19, 1977, as prepared by Eston Pendley & Associates, Inc., registered land surveyors. Reference
is made to said plat of survey for a more particular description. Less and except: All that tract or parcel of land condemned by Fulton county,
pursuant to order dated March 11, 1981, condemnation action C-71399, Fulton Superior court, recorded in book 1078, page 233;
Property being known as Land Lots 189 and 196 of the 13th District, Fulton County, Georgia (Jonesboro Road Property), being more
specifically described in Deed Book 46639, Page 543, and Deed Book 50000, Page 351, Fulton County, Georgia Records as:
TRACT 1:
All that tract or parcel of land lying and being in Land Lot 189 of the 13th District, Fulton County, Georgia, being more particularly described
as follows: BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and
196 said District and County; said beginning point also being at the northwest corner of property now or formerly owned by the Estate of John
A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence north 86
degrees 14 minutes 55 seconds west 399.89 feet to a right of way monument; running thence south 03 degrees 05 minutes 46 seconds west
14.87 feet to a right of way monument; running thence north 86 degrees 28 minutes 01 second west 38.88 feet to a right of way monument;
running thence north 03 degrees 07 minutes 55 seconds east 15.21 feet to a right of way monument; running thence north 88 degrees 45
minutes 54 seconds west 432.67 feet to a right of way monument located on the line dividing Land Lots 189 and 189, said District and County;
running thence south 00 degrees 58 minutes 42 seconds west along said Land Lot line a distance of 36.79 feet to the right of way monument
located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of
beginning; being a tract of land containing 0.450 acre, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-
Planning, dated 2/14/2007, Job No. 07-01-420.
TRACT 2:
All that tract or parcel of land lying and being in Land Lot 196 of the 13th District, Fulton County, Georgia, and being more particularly
described as follows:
BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said
District and County; said beginning point also being at the southwest corner of property now or formerly owned by the Estate of John A.
Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence south 86
degrees 14 minutes 55 seconds east 262.64 feet to a 1/2" rebar found; running thence south 00 degrees 19 minutes 36 seconds west 261.02 feet
to a I" open top pipe found at the northeast corner of property now or formerly owned by Mary Lankford (DB 16002, page 195), Fulton County
records); running thence north 89 degrees 20 minutes 30 seconds west along the northerly lines of properties now or formerly owned by Mary
Lankford, Ernest Page (DB 22074, page 287), Elica Morris, Willie Howell (DB 40570, page 562), Alvin Morris (DB 32450, page 486),
Rodney Vance (DB 32650, page 65), Gerald Vowell (DB 11620, page 97), and Monthesinos Family a total distance of 1,139.73 feet to the line
dividing Land Lots 195 and 196, said District and County; running thence north 01 degree 43 minutes 56 seconds east along said Land Lot line
a distance of 266.67 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195
and 196 said District and County and the point of beginning; being a tract of land containing 7.019 acres, according to Boundary Survey
prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07- 01-420;
TOGETHER WITH ANY AND ALL of the following:

(i) all buildings, structures and other improvements now or hereafter located thereon or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto;

(ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof;

(iii) all rents, issues, income, revenues and profits accruing therefrom whether now or hereafter due;

(iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon;

(v) all minerals, flowers, crops, trees, timber, shrubbery and other embalmments now or hereafter located thereon or thereunder or on or under any part or parcel thereof;

(vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures whether actually or constructively attached thereto and including all trade, domestic and ornamental fixtures, furniture, furnishings and all personal property of every kind or description whatsoever nor or hereafter located thereon, or in or on the buildings, structures and other improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and

(viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

All of the foregoing are hereinafter sometimes referred to collectively as the "Premises."

Any and all debts secured by said Security Deeds have been and are hereby declared due because of, among other possible events of default, non-payment of the monthly installments on said loans. The debts remaining in default, this sale will be made for the purpose of paying the same and all expenses of this sale, including attorneys' fees. (Notice of intent to collect attorneys' fees having been given).

The individual or entity that has full authority to negotiate, amend, and modify all terms of the security instrument with the Debtor is ONH HOLDINGS LLC, 10 Bay Circle South, Dover, Delaware 19904; Attn: Eric McIntyre, Manager; Telephone: (718) 560-7803. Please understand that the secured creditor is not required to negotiate, amend, or modify the terms of the security instruments.

This sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code; (2) final confirmation and audit of the status of the loans with the holder of the Security Deed; (3) all outstanding taxes (including ad valorem) and assessments, and any additional taxes which result from a reassessment of the Properties and/or Premises; (4) riparian rights incident to the Properties; (5) rights of tenants in possession, as tenants only, under unrecorded leases, without purchase or rights of first refusal; (6) all valid zoning ordinances; and (7) all other, if any, easements, limitations, reservations, covenants, restrictions, deeds to secure debt, liens and other encumbrances and matters of public records to which the security interest is junior and subordinate in terms of priority under the laws of the State of Georgia. The Properties, together with the Premises, will be sold on an "as is, where is" basis and without representation or warranty of any kind or nature whatsoever with respect thereto.

By virtue of Quitclaim Deed from Sons Investment Group LTD to West Village Holdings LLC, filed of record on November 16, 2018, and recorded in Deed Book 59426, Page 178, records of Fulton County, Georgia, to the best knowledge and belief of the undersigned, the party in possession of the Properties and Premises is West Village Holdings LLC or a tenant or tenants.


**ONH HOLDINGS, LLC**
**As Attorney-in-Fact for**
**Sons Investment Group Limited**


**HALL BOOTH SMITH, P.C.**
**BB&T Tower**
**200 West Forsyth Street, Suite 400**
**Jacksonville, FL 32202**
**Tel: 904.236.4929;**
**DD: 904.236.5334**
**#0000364449:12/06-4AS**

**EXHIBIT I.  Affidavit**

Deed Book 59485 Pg 694
Filed and Recorded Dec-04-2018 10:49am
2018-0308750
Real Estate Transfer Tax $0.00
Georgia Intangible Tax Paid $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

When recorded mail to:
Pamela L. Coleman, Esq.
Hall Booth Smith, P.C.
**Attn: Lindsey Atkinson**
191 Peachtree Street NE
Suite 2900
Atlanta, Georgia 30303-1775

## AFFIDAVIT OF ERIC MCINTYRE

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths, **ERIC MCINTYRE**, who, upon being duly sworn, deposes and states as follows:

1.

I am the managing member of ONH Holdings, LLC. As such, I have personal knowledge of the facts contained herein.

2.

ONH Holdings, LLC, by virtue of Assignment of Security Deed, filed of record on June 12, 2017, and recorded in Deed Book 57598, Page 65, records of Fulton County, Georgia, is the assignee and holder of that certain Security Deed and Agreement dated April 21, 2008 (the "2008 Security Deed"), with an original maturity date of April 21, 2009, from Sons Investment Group Limited ("Grantor"), filed of record at Deed Book 46639, Page 543, Fulton County, Georgia Records, said 2008 Security Deed securing a Promissory Note, dated April 21, 2008 (" 2008 Promissory Note"), with an original principal amount of $3,290,000.00, and any and all renewals, extensions, modifications, and substitutions thereof, either in whole or in part, and any and all other indebtedness contained in any other instrument, document, agreement, or writing executed prior to, concurrently therewith, or in the future by Grantor in favor of Grantee (assignor of ONH Holdings,

Deed Book 59485 Pg 695

LLC), in connection with the transactions that resulted in the obligations secured under said security deed, with interest from the date of the Promissory Note at the rate stated in said note until paid.

3.

By virtue of "Amendment to Promissory Note," dated and executed March 29, 2011 (the "2011 Amendment"), between Grantor and assignor of ONH Holdings, LLC, the 2008 Promissory Note and the 2008 Security Deed securing the interest in said indebtedness were renewed and extended (and the Promissory Note was modified in part), with a maturity date of the indebtedness of December 29, 2011.

4.

Under the terms of the 2011 Amendment, the original indebtedness in the amount of $3,290,000.00, along with accrued interest, became due and payable on December 29, 2011. The 2011 Amendment further provides (i) that interest shall accrue on the unpaid principal at a rate of 16.75% per year effective August 1, 2010; (ii) for a "Forbearance Period," from August 1, 2010 until December 29, 2011, during which time no default interest (as defined in the 2008 Promissory Note) would accrue as a result of non-payment; (iii) that all other terms and conditions of the 2008 Promissory Note shall remain in full force and effect except as expressly set forth in the 2011 Amendment; (iv) that neither party waives any rights under the 2008 Promissory Note by executing the 2011 Amendment; (v) that Lender would temporarily forebear asserting claims against the Grantor/Borrower based upon the terms and subject to all conditions set forth in the Amendment; and (vi) that failure to comply with any agreement specified in the 2011 Amendment shall be an event of default. The Grantor defaulted and made no payment on the indebtedness due and payable under the 2011 Amendment.

5.

ONH Holdings, LLC, by virtue of Assignment of Security Deed filed of record on June 12, 2017 and recorded in Deed Book 57598, Page 67, records of Fulton County, Georgia, is also the assignee and holder of that certain Security Deed and Agreement dated March 29, 2011 (the "2011 Security Deed") from Sons Investment Group Limited ("Grantor"), filed of record at Deed Book 50000, Page 351, Fulton County, Georgia Records, said 2011 Security Deed securing a Promissory Note, dated March 29, 2011, with a maturity date of December 29, 2011, in an original principal amount of $228,500.00 and any and all renewals, extensions, modifications, and substitutions thereof, either in whole or in part, and any and all other indebtedness contained in any other instrument, document, agreement, or writing executed prior to, concurrently therewith, or in the future by Grantee, in connection with the transactions that resulted in the obligations secured under said security deed, including the indebtedness contained in the 2011 Amendment executed of same date and bearing the same maturity date. The Grantor defaulted and made no payment on the indebtedness due and payable under the 2011 Promissory Note nor, as stated above, on the 2011 Amendment.

6.

The properties conveyed as security under each of the aforementioned security deeds for the indebtedness secured thereby (including all renewals, extensions, and/or modifications thereof) are described as follow:

Property commonly known as 7335 Old National Highway, Riverdale, Georgia 30296, being more specifically described in Deed Book 46639, Page 543, and Deed Book 50000, Page 351, Fulton County, Georgia Records as:

All that tract or parcel of land lying and being in land lot 188 of the 13th district of formerly Campbell, now Fulton county, Georgia, and being more particularly described as follows: Beginning at an iron pin located on the southwesterly right of way line of old national highway (50 foot right of way) 650.0 feet southeasterly, as measured along the southwesterly right of way line of old national

3

Deed Book 59485 Pg 697

highway from the intersection formed by the southwesterly right of way line of old national highway with the west line of land lot 188; thence continuing in a southeasterly direction, along the southwesterly right of way line of old national highway, 400.00 feet to an iron pin; running thence south 88 degrees 24 minutes west 518.2 feet to the west line of land lot 188 as marked by an iron pin; running thence north 01 degree 00 minutes east, along the west line of land lot 188, a distance of 00 minutes east, along the west line of land lot 188, a distance of 181.1 feet to an iron pin; running thence north 60 degrees 30 minutes east 382.9 feet to the southwesterly right of way line of Old National Highway at the point of beginning, being improved property comprising 2.885 acres all as shown on the hereinafter described plat of survey. More particularly shown and delineated on a plat of survey dated December 19, 1977, as prepared by Eston Pendley & Associates, Inc., registered land surveyors. Reference is made to said plat of survey for a more particular description. Less and except: all that tract or parcel of land condemned by Fulton county, pursuant to order dated March 11, 1981, condemnation action C-71399, Fulton Superior court, recorded in book 1078, page 233;

Property being known as Land Lots 189 and 196 of the 13th District, Fulton, County, Georgia (Jonesboro Road Property), being more specifically described in Deed Book 46639, Page 543, and Deed Book 50000, Page 351, Fulton County, Georgia Records as:

TRACT 1:
All that tract or parcel of land lying and being in Land Lot 189 of the 13th District, Fulton County, Georgia, being more particularly described as follows:
BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the northwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence north 86 degrees 14 minutes 55 seconds west 399.89 feet to a right of way monument; running thence north 03 degrees 05 minutes 46 seconds west 14.87 feet to a right of way monument; running thence north 86 degrees 28 minutes 01 second west 38.88 feet to a right of way monument; running thence north 03 degrees 07 minutes 55 seconds east 15.21 feet to a right of way monument; running thence north 88 degrees 45 minutes 54 seconds west 432.67 feet to a right of way monument located on the line dividing Land Lots 189 and 189, said District and County; running thence south 00 degrees 58 minutes 42 seconds west along said Land Lot line a distance of 36.79 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 0.450 acre, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420.

TRACT 2:
All that tract or parcel of land lying and being in Land Lot 196 of the 13th District, Fulton County, Georgia, and being more particularly described as follows:
BEGINNING at a right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County; said beginning point also being at the southwest corner of property now or formerly owned by the Estate of John A. Godby; running thence south 89 degrees 54 minutes 18 seconds east along said Godby property 871.01 feet to a CP; running thence south 86 degrees 14 minutes 55 seconds east 262.64 feet to a $1/2$" rebar found; running thence south 00 degrees 19 minutes 36 seconds west 261.02 feet to a I" open top pipe

4

Deed Book 59485 Pg 698

found at the northeast corner of property now or formerly owned by Mary Lankford (DB 16002, page 195), Fulton County records); running thence north 89 degrees 20 minutes 30 seconds west along the northerly lines of properties now or formerly owned by Mary Lankford, Ernest Page (DB 22074, page 287), Elica Morris, Willie Howell (DB 40570, page 562), Alvin Morris (DB 32450, page 486), Rodney Vance (DB 32650, page 65), Gerald Vowell (DB 11620, page 97), and Monthesinos Family a total distance of 1,139.73 feet to the line dividing Land Lots 195 and 196, said District and County; running thence north 01 degree 43 minutes 56 seconds east along said Land Lot line a distance of 266.67 feet to the right of way monument located at the common corner formed by the intersection of Land Lots 189, 190, 195 and 196 said District and County and the point of beginning; being a tract of land containing 7.019 acres, according to Boundary Survey prepared by Grant Shepherd & Associates, Surveying-Planning, dated 2/14/2007, Job No. 07-01-420;

TOGETHER WITH ANY AND ALL of the following:

(i)    all buildings, structures and other improvements now or hereafter located thereon or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto;

(ii)    all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof;

(iii)    all rents, issues, income, revenues and profits accruing therefrom whether now or hereafter due;

(iv)    all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon;

(v)    all minerals, flowers, crops, trees, timber, shrubbery and other embalmments now or hereafter located thereon or thereunder or on or under any part or parcel thereof;

(vi)    all estates, rights, title and interest therein, or in any part or parcel thereof;

(vii)    all equipment, machinery, apparatus, fittings, fixtures whether actually or constructively attached thereto and including all trade, domestic and ornamental fixtures, furniture, furnishings and all personal property of every kind or description whatsoever nor or hereafter located thereon, or in or on the buildings, structures and other improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and

(viii)    all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

7.

The original indebtedness due under the above-referenced promissory notes and renewal, extension, and modification, along with accrued interest, as well as certain late fees, remain due and owing to ONH Holdings, LLC.  Said indebtedness secured by the above-referenced security

5

instruments has been declared due because of, among other possible events of default, non-payment

of the payments due on said loans, renewal, extension, and modification.

**FURTHER AFFIANT SAYETH NOT.**

ERIC MCINTYRE

Sworn to and Subscribed before me this

the _30th_ day of _November_ , 2018.

NOTARY PUBLIC

My Commission Expires:

DAVID PETRUS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PE6169633
Qualified in Kings County
My Commission Expires _04/25/19_

Deed Book 59485 Pg 699
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

6