

**IT IS ORDERED as set forth below:**

**Date: March 31, 2020**

_____

**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBERS |
| | : | |
| WEST VILLAGE HOLDINGS, LLC, | : | BANKRUPTCY CASE |
| | : | 19-50013-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| WEST VILLAGE HOLDINGS, LLC, | : | ADVERSARY PROCEEDING |
| | : | NO. 19-05116-LRC |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ONH HOLDINGS, LLC, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 11 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

## **ORDER**

Before the Court are competing motions for summary judgment filed by West

Village Holdings, LLC ("Plaintiff" or the "Debtor") (Doc. 9) and ONH Holdings, LLC ("Defendant") (Doc. 12) on a Complaint to Determine Validity and Extent of Lien (Doc. 1) (the "Complaint"). Through the Complaint, Plaintiff asserts that title to certain real property as conveyed by two deeds to secure debt has reverted to Plaintiff pursuant to O.C.G.A. § 44-14-80(a). Accordingly, Plaintiff seeks an order canceling these deeds to secure debt.

The motions for summary judgment are brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. This matter constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(K); § 1334.

I.    Introduction

Plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 1, 2019 (the "Petition Date"). Plaintiff initiated this adversary proceeding by filing the Complaint on February 12, 2019. On March 14, 2019, Defendant filed its Answer and Affirmative Defenses to the Complaint (Doc. 4) (the "Answer"). On August 7, 2019, Plaintiff filed its Motion for Summary Judgment and Brief in Support Thereof (Doc. 9) ("Plaintiff's MSJ") and its Statement of Material Facts Not in Dispute (Doc. 10) ("Plaintiff's SUMF"). On August 28, 2019, Defendant filed a Response and Objection to

Plaintiff's Motion for Summary Judgment (Doc. 15) ("Defendant's Response") as well as a Response and Objection to Plaintiff's SUMF (Doc. 16) ("Defendant's Response to Plaintiff's SUMF"). Additionally, on August 12, 2019, Defendant filed its own Motion for Summary Judgment (Doc. 12) ("Defendant's MSJ") as well as a Brief in Support of Motion for Summary Judgment (Doc. 14) ("Defendant's Brief in Support") and a Statement of Uncontroverted Material Facts (Doc. 13) ("Defendant's SUMF"). Then, on September 3, 2019, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 17) ("Plaintiff's Response") as well as a response to Defendant's SUMF (Doc. 18) ("Plaintiff's Response to Defendant's SUMF"). Finally, on September 17, 2019, Defendant filed a Reply and Objection to Plaintiff's Response (Doc. 19) ("Defendant's Reply).

II.    <u>Facts</u>

Plaintiff holds an ownership interest in real property located at 7335 Old National Highway, Riverdale, Georgia and at 0 Jonesboro Road, Riverdale, Georgia (the "Property"). (Plaintiff's SUMF, ¶ 1; Defendant's SUMF, ¶ 1). Plaintiff obtained its interest in the Property from Sons Investment Group LTD ("SIG") via a Quitclaim Deed dated October 24, 2018. (Quitclaim Deed, Doc. 9, Ex. A; Plaintiff's SUMF, ¶ 2).

In 2008, SIG executed a Loan Agreement with Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower") whereby Watch Tower agreed to lend SIG $3,290,000.

(Loan Agreement, Doc. 14, Ex. O).

In connection with the Loan Agreement, SIG also executed (A) a Promissory Note dated April 21, 2008 (the "2008 Promissory Note") whereby SIG agreed to pay Watch Tower $3,290,000 in monthly installments of at least $35,641.67 beginning on March 21, 2008 with the whole sum, principal and interest, becoming due on April 21, 2009; (B) a Security Deed and Agreement dated April 21, 2008 (the "2008 Security Deed") whereby SIG conveyed the Property to Watch Tower as collateral for its obligations under the 2008 Promissory Note; and (C) an Assignment of Leases, Rents, Issues and Profits (the "2008 Assignment of Leases") whereby SIG assigned to Watch Tower all rents, revenues, profits and income relating to the use of the Property. (2008 Promissory Note, Doc. 14, Ex. E; 2008 Security Deed, Doc. 14, Ex. C; 2008 Assignment of Rents, Doc. 14, Ex. P; Plaintiff's SUMF, ¶ 3; Defendant's SUMF, ¶ 12). The 2008 Security Deed was recorded in the Fulton County real property records on April 22, 2008. (2008 Security Deed, Doc. 14, Ex. G)

On March 29, 2011, SIG and Watch Tower executed an Amendment to Promissory Note (the "2011 Amendment") whereby the parties agreed to amend the 2008 Promissory Note to provide a forbearance period and a new maturity date of December 29, 2011, when the principal sum of $3,290,000 plus all accrued interest would be due. (2011 Amendment, Doc. 14, Ex. F). Plaintiff contends, and Defendant has acknowledged, that the 2011 Amendment was never recorded in the Fulton County real property records. *See* Plaintiff's

4

Response at 8; Defendant's Reply at 14. This contention is consistent with the fact that no recording stamp appears on the 2011 Amendment attached to Defendant's Brief in Support. (2011 Amendment, Doc. 14, Ex. F).

On March 29, 2011, SIG and Watch Tower also executed (A) another Promissory Note (the "2011 Promissory Note") whereby SIG agreed to pay Watch Tower $228,500 plus interest with a maturity date of December 29, 2011; and (B) another Security Deed and Agreement (the "2011 Security Deed," collectively with the 2008 Security Deed, the "Security Deeds") whereby SIG conveyed the Property to Watch Tower as collateral for the 2011 Promissory Note. (2011 Promissory Note, Doc. 14, Ex. G; 2011 Security Deed, Doc. 14, Ex. D). The 2011 Security Deed was recorded in the Fulton County real property records on April 19, 2011. (2011 Security Deed, Doc. 14, Ex. D).

On June 7, 2017, Watch Tower assigned the 2008 and 2011 Security Deeds to Defendant. (Plaintiff's SUMF, ¶ 5; Defendant's Response to Plaintiff's SUMF ¶ 5). On October 8, 2018, Defendant initiated foreclosure proceedings for a November 6, 2018 foreclosure sale. Defendant postponed the November 2018 sale, but resumed the foreclosure proceedings on October 30, 2018, for a December 4, 2018 foreclosure sale. (Defendant's SUMF, ¶ 31; Plaintiff's Response to Defendant's SUMF, ¶ 31).

On November 16, 2018, the Quitclaim Deed conveying the Property from SIG to Plaintiff was recorded in the Fulton County Real Property Records. (Quitclaim Deed, Doc.

9, Ex. A; Defendant's SUMF ¶ 32). On December 4, 2018, Defendant caused an Affidavit

of Eric McIntyre (the "2018 Affidavit") to be recorded in the Fulton County real property

records. (2018 Affidavit, Doc. 9, Ex. D; Plaintiff's SUMF ¶ 9; Defendant's Response to

Plaintiff's SUMF ¶ 9).

Defendant postponed the December 4, 2018 foreclosure sale.  (Defendant's SUMF,

¶ 40). On November 29, 2018, Defendant resumed foreclosure proceedings for a January

2, 2019 foreclosure sale. (Defendant's SUMF, ¶ 41; Plaintiff's Response to Defendant's

SUMF, ¶ 41). Plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code

on January 1, 2019. (Defendant's SUMF, ¶ 48; Plaintiff's Response to Defendant's SUMF,

¶ 48).

III.   <u>Conclusions of Law and Discussion</u>

Through its motion for summary judgment, Plaintiff contends that both the 2008 and

the 2011 Security Deeds are subject to the 7-year reversion period as provided in O.C.G.A.

§ 44-14-80(a) because both state a fixed maturity date. Plaintiff argues that, because the

2008 Security Deed states that the 2008 Promissory Note has a maturity date of April 21,

2008 and Security Deed states that the 2011 Promissory Note has a maturity date of

December 29, 2011, title conveyed by the 2008 Security Deed reverted on April 21, 2016

and title conveyed pursuant to the 2011 Security Deed reverted on December 29, 2018.

Therefore, Plaintiff seeks summary judgment that title to the Property has reverted to

Plaintiff and that the Property is not encumbered by either Security Deed.

On the other hand, Defendant, through its motion for summary judgment, contends that both Security Deeds are subject to the 20-year reversion period as provided in O.C.G.A. § 44-14-80(a) because they contain an "affirmative statement" of intent to "establish a perpetual or indefinite security interest" in the Property. Alternatively, Defendant argues that even if the 7-year reversion period applies, it is still entitled to a secured claim on the Property because it initiated foreclosure proceedings on the Property before title reverted under the 2011 Security Deed. Further, Defendant argues that the 2011 Security Deed, in addition to securing the 2011 Promissory Note, also secures Plaintiff's obligations under the 2011 Amendment. Accordingly, Defendant requests summary judgment that it has a valid security interest in the Property pursuant to the Security Deeds, which secures the entire debt owed to Defendant.

    A.  <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court will grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993). A fact is material if it might affect the outcome of a proceeding under the governing

substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  The Court "should resolve all reasonable doubts about the facts in favor of the non-moving party, and draw all justifiable inferences in his favor." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991). Where a case involves cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether judgment may be entered in accordance with the Rule 56 standard." *Trauner v. Delta Air Lines, Inc., (In re Think Retail Solutions, LLC)*, 2019 WL 2912717, *4 (Bankr. N.D. Ga. July 5, 2019).

### B.  Applicable Reversion Period as Provided by O.C.G.A. § 44-14-80(a)

Plaintiff contends that pursuant to O.C.G.A. § 44-14-80(a) title to the Property reverted after the expiration of seven years from the stated maturity dates in the Security Deeds. On the other hand, Defendant contends that title to the Property has not reverted because the applicable reversion period under O.C.G.A. § 44-14-80(a) is 20 years.

O.C.G.A. § 44-14-80(a) provides, in relevant part, that:

> Title to real property conveyed to secure a debt or debts shall revert to the grantor or his or her heirs, personal representatives, successors, and assigns at the expiration of seven years from the maturity of the debt or debts… stated or fixed in the record of the conveyance… provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of

8

the later of (A) seven years from the maturity of the debt or debts… as stated or fixed in the record of conveyance… or (B) 20 years from the date of the conveyance as stated in the record…

This current version of O.C.G.A. § 44-14-80 was modified in 1994 "to provide for an automatic reverter of title to land described in a security deed after seven years from the maturity date of the debt secured thereby or 20 years *if* the parties so expressly agree in writing in the security deed." *Matson v. Bayview Loan Servicing, LLC*, 339 Ga. App. 890, 891-92 (2016) (supporting citations omitted) (emphasis added). Accordingly, the default reversion period under this statute is 7 years from maturity of the debt as stated in the security deed, *unless* the security deed contains an "affirmative statement" of intent "to establish a perpetual or indefinite security interest" in the property conveyed.

Here, the 2008 Security Deed provides in relevant part that:

THIS INSTRUMENT IS A DEED passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and a security agreement granting a security interest pursuant to the Uniform Commercial Code of the State of Georgia, and is not a mortgage. This deed and security agreement is made and intended to secure:

(i)      An obligation of Grantor to Grantee evidenced as follows: One Promissory Note in the original principal amount of $3,290,000, which Promissory Note is due and payable in full no later than April 21, 2009.

(ii)     any and all renewal or renewals, extension or extensions, modification or modifications thereof, and substitution or substitutions thereof, either in whole or in part;

9

(2008 Security Deed, Doc. 14, Ex. C at 3). Similarly, the 2011 Security Deed states in

relevant part that:

> THIS INSTRUMENT IS A DEED passing legal title pursuant to the laws of
> the State of Georgia governing deeds to secure debt and a security agreement
> granting a security interest pursuant to the Uniform Commercial Code of the
> State of Georgia, and is not a mortgage. This deed and security agreement is
> made and intended to secure:
>
> (iii)    An obligation of Grantor to Grantee evidenced as follows: One
>          Promissory Note in the original principal amount of $228,500 which
>          Promissory Note is due and payable in full no later than December 29,
>          2011.
>
> (iv)     any and all renewal or renewals, extension or extensions, modification
>          or modifications thereof, and substitution or substitutions thereof,
>          either in whole or in part;

(2011 Security Deed, Doc. 14, Ex. D at 3). Accordingly, title to the Property would have

reverted upon 7 years following these stated maturity dates *unless* the Security Deeds

contain an "affirmative statement" of intent "to establish a perpetual or indefinite security

interest" in the Property.

Defendant contends that there are "numerous statements" of intent to create a

perpetual security interest in the Security Deeds.[1] The following are the most persuasive:[2]

---

[1] Note that other than reference to the specific amounts due under the 2008 and 2011 Promissory Notes and the
respective maturity dates of those promissory notes, the language of the Security Deeds is identical. (2008 Security
Deed, Doc. 14, Ex. C; 2011 Security Deed, Doc. 14., Ex. D). *See also* Defendant's Response at 5, n. 3 (stating that
"[w]ith the exception of the referenced Promissory Notes, the 2008 and 2011 Security Deeds… contain identical
provisions.")

[2] Defendant also points to the following provisions in the Security Deeds as evidence of the parties' intent to create a
perpetual security interest in the Property: paragraph (4) titled "Further Assurances" under the heading "Grantor

10

The first is paragraph (2) titled "Other Payments and Terms" under the heading "Events of Default" which states that the following is an event of default:

> failure of grantor to make any payment… required hereunder or to observe, perform or comply with any of the covenants, terms or conditions set forth herein or in any other instrument, document, agreement, letter or other writing heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with any transaction which resulted in the Indebtedness or any part thereof.

(Security Deeds, Doc. 14, Ex. C, D at 5). The second is paragraph (4) titled "Other Remedies" under the heading "Grantee's Remedies and Power of Sale" which states that:

> Grantee may exercise all rights and remedies contained in any other instrument, document, agreement, or writing, heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with the transactions resulting in the Indebtedness or any part thereof.

(Security Deeds, Doc. 14, Ex. C, D at 6).

Defendant contends that these provisions are dragnet clauses which "secure" SIG's obligations and Watch Tower's remedies "in any other" agreement made concurrently with the Security Deeds or executed in the future by the parties in connection with the transactions resulting in the Indebtedness. Under Georgia law, "[a]n 'open-end' or 'dragnet' clause is a clause in a security deed that provides 'that, in addition to securing the

---

Covenant's and Agrees"; paragraph (7) titled "Power of Sale" under the heading "Grantee's Remedies and Power of Sale"; and paragraph (8) titled "Renegotiation" under the heading "Additional Provisions." However, none of these provisions state that the parties intend to create a perpetual or indefinite security interest in the Property and therefore are not an "affirmative statement" to do so.

debt named or described in the instrument' the deed 'shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor.'" *Mikes Furniture Barn, Inc. v. Smith*, 342 Ga. App. 558, 561 (2017) (quoting O.C.G.A. § 44-14-1(b)). Here, these provisions say nothing about securing any obligations or remedies. Instead, the first provision states that a default under any other agreement made in connection with the transaction giving rise to the Indebtedness (the 2008 and 2011 Promissory Notes respectively) also constitutes a default under the Security Deeds. Accordingly, this provision cannot be a dragnet clause and is instead a cross-default clause.[3] Similarly, the second provision speaks only to the election of remedies and states that, in addition to the other remedies listed, the grantee can also exercise its rights and remedies contained in any other agreement between the parties. Thus, because this provision says nothing about securing an obligation or remedy, it is also not a dragnet clause.

Further, even if the above provisions were true dragnet clauses, the inclusion of a dragnet clause in a security deed does not necessarily constitute an "affirmative statement" to create a perpetual or indefinite security interest. *See Smith*, 342 Ga. App. at 561 (stating that while "[i]n some cases, this Court has held that an open-end [or dragnet clause] *may*

---

[3] A cross-default clause is "a contractual agreement specifying that a default in the terms and conditions of one obligation may constitute an event of default under a separate promissory note or secured transaction." FRANK S. ALEXANDER ET. AL., *Ga. Real Estate Fin. & Foreclosure Law*, § 4.1 Default (2019) (citing *Stewart v. Diehl*, 219 Ga. App. 821 (1996)).

12

constitute an affirmative statement of a perpetual or indefinite security interest… we have never held that it *must*.) (emphasis in original)). In *Smith*, the Georgia Court of Appeals held that a security deed which contained a dragnet clause, but also "identified a fixed maturity date for the secured debt" for "a loan for a sum certain rather than a revolving line of credit," lacked an affirmative statement of intent to create a perpetual security interest. *Id.* at 563. The *Smith* court stated that the inclusion of a dragnet clause and a fixed maturity date "at the very least [constitutes] conflicting terms that create an ambiguity, which cannot constitute an affirmative statement of intent." *Id.*

In an attempt to distinguish this case from *Smith*, Defendant argues that the Loan Agreement which gave rise to the 2008 Promissory Note was a construction loan and is more akin to a revolving line of credit than a loan for a sum certain. In support of this argument, Defendant cites to the case of *Stearns Bank, N.A. v. Mullins*, 333 Ga. App. 369 (2015). In *Stearns*, the Georgia Court of Appeals held that a deed to secure debt which contained both a fixed maturity date and a dragnet clause contained "a sufficient statement that the parties intended to establish a perpetual or indefinite security interest in the real property" because the security deed "*on its face* show[ed] that the parties intended to create a revolving line of credit" and "[b]y definition, a revolving line of credit is an indefinite arrangement." *Id.* at 372-73. (emphasis added).

Here, Defendant does not point to a provision in the Security Deeds which "on its

13

face" indicates that the parties intended to create a revolving line of credit. Instead, Defendant points to the Loan Agreement itself and argues that it shows that the parties created a construction loan which "sets forth the borrower's periodic draws against the construction loan up to [a] fixed limit" and that "draws [or] future conditional advances/disbursements were not set on a fixed schedule but were contingent upon satisfactory work." As an initial matter, it is not clear if the Court may look beyond the Security Deeds themselves to find an "affirmative statement" of intent to create a perpetual security interest as O.C.G.A. § 44-14-80(a) suggests that the "affirmative statement" must be "contained in the record of conveyance." However, even if the Court may look beyond the Security Deeds, Defendant's description of the Loan Agreement is imprecise.

First, the Loan Agreement specifically states that "Borrower acknowledges that [it is] responsible for the payment of interest on the full amount of the loan, even if a portion of the loan is used to fund the Holdback." (Doc. 14, Ex. O at 4). Thus, under the terms of the loan, it appears that the entire principal amount of $3,290,000 became owing upon execution of the agreement and not upon the borrower's decision to draw down on a line of credit. Further, while the Loan Agreement states that release of the Holdback amount is contingent upon satisfactory completion of work, it also states that "if the Work has not been completed to the satisfaction of Lender… Lender may… in its sole and absolute discretion… retain the Holdback and apply it against principal, interest or other sums due"

14

and that the "Holdback is [] additional security for the Loan" (*Id.* at 3, 4). If the Loan Agreement was a true revolving line of credit, there would be no need to apply the Holdback amount to sums due under the loan, because those amounts would not have been "drawn" upon by the Borrower and thus would not have been owing.[4] Instead, it appears that the Loan Agreement provides that the entire $3,290,000 is "due in full within one (1) year of the interest start date" regardless of whether any Holdback amount is released to the borrower. Accordingly, even if the Court is permitted to look at the Loan Agreement, the Court finds that it does not support Defendant's argument because it is more similar to a "loan for a sum certain" than a revolving line of credit.

Therefore, because both Security Deeds contain a "fixed maturity date," do not contain true dragnet clauses, and secure loans "for a sum certain," the Court finds that the Security Deeds do not contain "affirmative statement[s]" of "intent to create a perpetual or indefinite security interest" in the Property.[5] Thus, the Court concludes that both the 2008

---

[4] *See* O.C.G.A. § 44-14-3(a)(6) which defines a "[r]evolving loan agreement" as "an arrangement between a lender and a debtor for the creation of debt pursuant to an agreement secured by an instrument and under which: (A) [t]he lender may permit the debtor to create debt from time to time; (B) [t]he unpaid balances of principal of such debt and the loan finance and other appropriate charges are debited to an account; (C) [a] loan finance charge is computed on the outstanding balances of the debtor's account from time to time; (D) [t]he debtor agrees to repay the debt and accrued finance charges in accordance with the written agreement with the lender; and (E) [t]he limitation on the maximum amount which the debtor is entitled to become indebted under said arrangement between the lender and debtor is stated on the face of the instrument, and said amount shall be deemed to be notice of the maximum amount secured by the instrument."

[5] As additional support for its argument that the parties intended to create a perpetual security interest in the Property, Defendant also cites to language in the 2008 Assignment of Rents as well as in the Promissory Notes which states that the assignment continues until the debt is paid in full and that the debt must be paid "before reconveyance" of the security interest will occur. As noted above, it is unclear if the Court may look beyond the Security Deeds themselves, but even assuming reference to extrinsic language is permitted, the Court does not find this language in the Promissory

Security Deed and the 2011 Security Deed are subject to the default 7-year reversion period as provided in O.C.G.A. § 44-14-80(a).

### C. Application of the Reversion Period as Provided by O.C.G.A. § 44-14-80.

Because the Court finds that the 7-year reversion period of O.C.G.A. § 14-44-80(a) applies, title to the Property as conveyed by the Security Deeds would have reverted upon "the expiration of seven years from the maturity of the debt… as stated or fixed in the record of the conveyance." Accordingly, because the 2008 Security Deed contains a fixed maturity date of April 21, 2009, title conveyed under this instrument reverted back to the grantor on April 21, 2016. The fact that the maturity date of the 2008 Promissory Note was extended to December 29, 2011 by the 2011 Amendment does not change the date of reversion because the 2011 Amendment was not recorded.

O.C.G.A. § 44-14-80(b) provides, in relevant part, that if a grantee of a security deed

at any time before the title reverts… make and *cause to be recorded* upon the record of the conveyance… a written renewal of the debt or debts secured… the conveyance and record thereof shall remain of full force and effect and the title shall not revert for an additional period of seven years or 20 years according to the appropriate reversion period stated in subsection (a) of this Code section from the date of the renewal unless the debt or debts are paid sooner.

(emphasis added). Here, Defendant has acknowledged that the 2011 Amendment was not

---

Notes or the 2008 Assignment of Rents persuasive because it merely states that the debt needs to be paid in full. It says nothing about creating a perpetual security interest in the Property.

16

recorded. Thus, the 7-year reversion period ran from the maturity date as stated in the 2008 Security Deed rather than the extended maturity date as provided in the 2011 Amendment.[6] Accordingly, title as conveyed by the 2008 Security Deed reverted on April 21, 2016.[7]

Similarly, because the 2011 Security Deed has a fixed maturity date of December 29, 2011, title as conveyed by this instrument would have reverted to Plaintiff on December 29, 2018. However, Defendant contends that because it began foreclosure proceedings on the Property prior to December 29, 2018, title as conveyed by the 2011 Security Deed could not have reverted pursuant to O.C.G.A. § 44-14-80(a) which states in relevant part:

> provided, however, that foreclosure by an action or by the exercise of power of sale, if started prior to reversion of title, shall prevent the reversion if the foreclosure is completed without delay chargeable to the grantee or the grantee's heirs, personal representatives, successors, or assigns.

Defendant argues that this statute "prevent[s] the reversion" because it resumed foreclosure proceedings on the Property on November 29, 2018 which was before the expiration of the 7-year reversion period on December 29, 2018. Further, Defendant points out that its scheduled foreclosure sale of the Property for January 2, 2019 was prevented by the

---

[6] *See also Matson*, 339 Ga. App. at 891-92, n.2 (concluding that for a renewal of a recorded security deed to extend the applicable reversion period of O.C.G.A. § 44-14-80(a), the renewal must be recorded).

[7] Defendant also contends that because the 2018 Affidavit of Eric McIntyre provides that the 2011 Amendment renews and extends the $3,290,000 debt of the 2008 Promissory Note to a maturity date of December 29, 2011, the new maturity date of December 29, 2011 is "fixed in the record of conveyance" as provided by O.C.G.A. § 44-14-80(c). However, while O.C.G.A. § 44-14-80(c) states that the applicable reversion period will run "from the maturity of the indebtedness as shown by [an] affidavit" it also states that the affidavit must be recorded "before the title reverts." Here, the 2018 Affidavit was not recorded until December 4, 2018 which was after title as conveyed by the 2008 Security Deed reverted on April 21, 2016. Thus, the 2018 Affidavit did not prevent reversion of title to the Property as conveyed by the 2008 Security Deed.

17

Debtor's filing of its Chapter 11 bankruptcy case on January 1, 2019, which it contends

cannot be a "delay chargeable to the grantee."

In response, Plaintiff contends that the statute not only requires that foreclosure

proceedings be started prior to reversion of title, but also requires that the foreclosure sale

be completed. In support of this argument, Plaintiff cites to the case of *In re Hall*, 2019 WL

2866741 (Bankr. M.D. Ga., July 2, 2019). In *Hall*, the court held that although the

defendant in that case began its foreclosure proceedings prior to reversion of title under a

security deed, "unfortunately… the foreclosure was never completed as required under

[O.C.G.A. § 44-14-80(a)] to trigger the exception." *Id.* at *4. The court in *Hall* referenced

the defendant's argument that delay in completing its foreclosure sale was attributable to

the debtor, but the court held that "because the foreclosure sale was not completed, delay

chargeable to either party is of no consequence." *Id.* at *5, n.2.

However, in *Hall*, it appears that the lender voluntarily "postponed" its scheduled

foreclosure sale rather than having the foreclosure sale prevented by the filing of a

bankruptcy case by the debtor. *Hall* states that the lender in that case "initiated proceedings

to foreclose on the [p]roperty" "on December 1, 2017" by "advertising for a January 2,

2018 foreclosure sale." However, the debtor in that case sought a loan modification and

"requested that the [lender] postpone the foreclosure" "so as to allow the [d]ebtor more

time to complete the loan modification application." The lender in that case "obliged and

18

postponed [the] sale of the [p]roperty until after January 25, 2018." Then on, February 1, 2018, the debtor filed bankruptcy "without having submitted… a complete loan modification application package." Accordingly, it appears the lender in *Hall* voluntarily agreed to "postpone" the scheduled foreclosure sale despite the fact that title to the property was set to revert back to the debtor on January 1, 2018. Thus, it appears that when the lender in *Hall* agreed to postpone the sale, it lost its ability to rely on the foreclosure proceedings it began prior to the reversion of title and therefore could not rely on O.C.G.A. § 44-14-80(a) to "prevent the reversion" of title.

Unlike the defendant in *Hall*, Defendant did not agree to voluntarily postpone the foreclosure sale scheduled for January 2, 2019. Instead, Debtor's bankruptcy petition filed on January 1, 2019 gave rise to the automatic stay which prevented Defendant from completing the sale. Further, Defendant has filed a motion for relief from the automatic stay in Plaintiff's main bankruptcy case. If this motion is granted, Defendant will be able to complete its foreclosure sale of the Property. Accordingly, this case is distinguishable from *Hall* because Defendant can still rely on the foreclosure proceedings it "started prior to reversion of title." Moreover, any delay in completing the foreclosure sale of the Property was a result of Plaintiff's filing of a voluntary bankruptcy petition which cannot be "chargeable to" the Defendant.

For these reasons, the Court finds that, while title to the Property as conveyed by the

19

2011 Security Deed would have reverted on December 29, 2018, Defendant's initiation of foreclosure proceedings on the Property prior to reversion of title "prevent[s] the reversion" so long as Defendant completes the foreclosure sale without delay. As no delay chargeable to the Defendant has occurred, the Court concludes that Defendant can still rely on O.C.G.A. § 44-14-80(a) to "prevent the reversion" of title. Therefore, pursuant to the 2011 Security Deed, Defendant has a valid security interest in the Property.[8]

    D. Debts Secured by the 2011 Security Deed

    As noted above, Defendant contends that in addition to securing the 2011 Promissory Note, the 2011 Security Deed also secured the obligations of SIG under the 2011 Amendment. In support of this argument, Defendant again points to the language in the 2011 Security Deed it contends constitutes dragnet clauses as well as the 2018 Affidavit of Eric McIntyre.

    Starting first with the language of the 2011 Security Deed, Defendant cites to *Williams v. Citizens Trust Bank (In re Truitt)*, 11 B.R. 15, 19 (Bankr. N.D. Ga. 1981) and O.C.G.A. § 44-14-1(b)[9] for the proposition that when a security deed provides that it

---

[8] Given the pending motion for relief from stay filed by Defendant in Plaintiff's main bankruptcy case, the Court recognizes the possibility that Defendant may lose its ability to rely on its initiation of foreclosure proceedings if the Court granted relief from stay and Defendant chose not to complete the foreclosure "without delay." However, as Defendant has not yet been granted relief from the automatic stay to proceed with its foreclosure sale, the Court believes that such a situation could be addressed later, if necessary.

[9] O.C.G.A. § 44-14-1(b) provides in relevant part that: "the operation of 'open-end' clauses contained in real estate mortgages or deeds conveying realty as security for a debt, which clauses provide that, in addition to securing the debt named or described in the instrument, such instruments or the property thereby conveyed shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor, is limited to other debts or obligations

secures, past, present or future indebtedness between the grantor and grantee, the stated consideration is not the only indebtedness secured by the deed. Defendant again points to paragraph 2 titled "Other Payments and Terms" under the heading "Events of Default" and paragraph 4 titled "Other Remedies" under the heading "Grantee's Remedies and Power of Sale" arguing that these provisions "secure" the grantor's obligations and the grantee's remedies under any other instrument or agreement executed in the past, present, or future between the parties in connection with the transactions resulting in the Indebtedness. Accordingly, Defendant contends that because the 2011 Amendment was executed concurrently with the 2011 Security Deed in connection with the transactions that resulted in the additional loan of $228,500 (the amount owed under the 2011 Promissory Note), that the grantor's compliance with the terms of the 2011 Amendment is secured by the 2011 Security Deed.

As explained above, the deficiency with this argument is that the 2011 Security Deed does not contain a true dragnet clause, which, under Georgia law, "is a clause in a security deed that provides 'that, in addition to securing the debt named or described in the instrument' the deed 'shall also secure any other debt or obligation that may be or become owing by the mortgagor or grantor.'" *Smith*, 342 Ga. App. at 561. Instead, the language in

---

arising ex contractu, as distinguished from those arising ex delicto, between the original parties to the security instrument."

the 2011 Security Deed cited by Defendant constitutes a cross-default clause and an election of remedies clause. Neither of these provisions state that the 2011 Security Deed *secures* the obligations of the grantor and the remedies of the grantee in any other instrument. Rather, the cross-default provision states that a default by the grantor of its obligations in another agreement executed in connection with the transaction resulting in the 2011 Promissory Note also constitutes a default under the 2011 Security Deed. However, a default by the grantor in another agreement would not change the obligations *secured* by the 2011 Security Deed—that is the $228,500 owed by the grantor pursuant to the 2011 Promissory Note which the 2011 Security Deed is "intended to secure." Similarly, the election of remedies provision does not *secure* any remedy contained in another agreement, but instead provides that the grantee may still exercise those remedies pursuant to those agreements in addition to the other remedies listed in the 2011 Security Deed. Accordingly, the Court is not persuaded that any provision contained in the 2011 Security Deed constitutes a dragnet clause which would allow the 2011 Security Deed to secure obligations contained in the 2011 Amendment.

Additionally, Defendant argues that the 2018 Affidavit of Eric McIntyre incorporates the 2011 Amendment into the 2011 Security Deed because it sets forth the terms of the 2011 Amendment and states that it is secured by the 2011 Security Deed. The 2018 Affidavit provides in relevant part that:

22

> ONH Holdings, LLC, by virtue of Assignment of Security Deed filed of record on June 12, 2017 and recorded [in the Fulton County real property records], is also the assignee and holder of the [2011 Security Deed], said 2011 Security Deed securing a Promissory Note, dated March 29, 2011, with a maturity date of December 29, 2011, in an original principal amount of $228,500.00 and any and all renewals, extensions, modifications, and substitutions thereof, either in whole or in part, and any and all other indebtedness contained in any other instrument, document, agreement, or writing executed prior to, concurrently therewith, or in the future by Grantee, in connection with the transactions that resulted in the obligations secured under said security deed, including the indebtedness contained in the 2011 Amendment executed of same date and bearing the same maturity date.

(2018 Affidavit, Doc. 1, Ex. I, at 51). While this 2018 Affidavit contends that the 2011 Security Deed also secured the indebtedness contained in the 2011 Amendment, the plain language of the 2011 Security Deed leads the Court to the opposite conclusion.

Under Georgia law, "[a] deed is a contract" which is governed by the general rules of contract interpretation. *See Nesbitt v. Wilde*, 306 Ga. App. 812, 813 (2010).

> The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract shall be enforced according to its clear terms. In fact, no construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

*National Hills Exchange, LLC v. Thompson*, 319 Ga. App. 777, 778 (2013) (quoting *Longstreet v. Decker*, 312 Ga. App. 1, 3 (2011)). Here, the 2011 Security Deed clearly states that it "is made and intended to secure" "[o]ne promissory note in the original principal amount of $228,500, which Promissory Note is due and payable in full no later

23

than December 29, 2011" as well as "any and all [] renewals, [] extensions, [] modifications thereof, and [] substitutions therefor, either whole or in part." (2011 Security Deed, Doc. 14, Ex. D, at 3). Contrary to Defendant's argument, there is no other language in the 2011 Security Deed which states that the deed secures anything other than the 2011 Promissory Note or the renewals, extensions, modifications, or substitutions thereof. Accordingly, the Court finds that the plain and unambiguous language of the 2011 Security Deed states that it only secures the 2011 Promissory Note. The statements contained in the 2018 Affidavit do not change this interpretation as the Court is bound to interpret the 2011 Security Deed according to its clear terms. *See National Hills*, 319 Ga. App. at 778.

For these reasons, the Court finds that the 2011 Security Deed only secures the obligations under the 2011 Promissory Note. The Court further finds that the 2011 Security Deed does not secure any obligations under the 2011 Amendment.

IV.    <u>Conclusion</u>

In sum, the Court finds that, pursuant to O.C.G.A. § 44-14-80(a), title to the Property as conveyed in the 2008 Security Deed reverted on April 21, 2016. However, the Court also finds that title to the Property as conveyed in the 2011 Security Deed has not yet reverted, as Defendant initiated foreclosure proceedings prior to the expiration of the 7-year reversion period on December 29, 2018, and because the delay that prevented the foreclosure sale is not chargeable to Defendant. Therefore, pursuant to the plain terms of

24

the 2011 Security Deed, Defendant has a valid security interest in the Property up to the amounts due and owing under the 2011 Promissory Note.

Thus, for the reasons stated herein, the Court finds that Plaintiff's Motion for Summary Judgment should be, and hereby is, **GRANTED in part and DENIED in part**. The Court further finds that Defendant's Motion for Summary Judgment should also be, and hereby is, **GRANTED in part and DENIED in part**. Accordingly,

**IT IS HEREBY ORDERED** that the title conveyed by the 2008 Security Deed reverted on April 21, 2016 pursuant to O.C.G.A. § 44-14-80(a).

**IT IS FURTHER ORDERED** that pursuant to the 2011 Security Deed, Defendant has a valid security interest in the Property up to the amounts due and owing under the 2011 Promissory Note.

**IT IS FURTHER ORDERED** that a separate Final Judgment in accordance with this Order will be entered contemporaneously by the Court pursuant to Rule 58 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7058 of the Federal Rules of Bankruptcy Procedure.

**END OF DOCUMENT**

**Distribution List**

**Will B. Geer**
Wiggam & Geer, LLC
Suite 1150
50 Hurt Plaza SE
Atlanta, GA 30303

**John C. Clark**
Clark Law Group, LLC
17 Executive Park Drive, Ste. 480
Atlanta, GA 30329

**Pamela L. Coleman**
1301 1st Avenue, Suite 100
P.O. Box 2707
Columbus, GA 31902

**Nicholas Joseph Garcia**
Hall Booth Smith, P.C.
Suite 100
1301 1st Avenue
Columbus, GA 31901